576 A.2d 99

**CENTENNIAL SCHOOL DISTRICT, Appellant,**

v.

**CENTENNIAL EDUCATION ASSOCIATION, Appellee.**

Commonwealth Court of Pennsylvania.

Argued May 4, 1990.

Decided June 5, 1990.

John B. Langel, Ballard, Spahr, Andrews & Ingersoll, for appellant.

A. Martin Herring, A. Martin Herring & Associates, for appellee.

Before PALLADINO and McGINLEY, (P.), JJ., BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge.

The Centennial School District (the District) appeals an order of the Court of Common Pleas of Bucks County which affirmed an award of an arbitrator made pursuant to a grievance filed by the Centennial Education Association (the Association).

The Association is the certified bargaining representative of a group of the District's employees including all of the District's professional employees. The District and the Association are parties to a collective bargaining agreement which covered the period from 1985 to 1988, the relevant period for the present controversy.

Four individual professional employees of the District had resigned their positions between 1966 and 1978. All four were rehired by the District between 1981 and 1985. At the time of rehiring, each of the individual professional employees agreed to be placed on the salary schedule at the same level as newly hired teachers. The Association filed grievances on behalf of each of the four teachers, alleging that they had been placed on the salary schedule at a level lower than that required by the collective bargaining agreement. When the grievances were denied at the first four levels mandated by the collective bargaining agreement, the Association elected to proceed to arbitration. Following a hearing, the arbitrator ruled in favor of the Association and concluded that the collective bargaining agreement required that the individual teachers who had been rehired were entitled to credit for the prior years of teaching within the District. The District appealed to the Court of Common Pleas of Bucks County which affirmed the arbitrator's award. This appeal followed.

■ The scope of review of an arbitrator's award is circumscribed. As the Supreme Court has stated in a recent pronouncement in this area:

It is well settled that, in reviewing an arbitrator's interpretation of a collective bargaining agreement, broad deference is to be accorded the arbitrator's decision.... This is due to the fact that the parties bargained for an arbitrator's interpretation, not a court's; hence, the mere fact that the agreement is subject to other interpretations does not warrant judicial intervention into the arbitrator's realm....

The so-called 'essence of the collective bargaining agreement' test has been frequently enunciated by this Court as the standard governing judicial deference to arbitrator's decisions.... It requires that an arbitrator's interpretation be upheld if it can, in *any rational way*, be derived from the language and context of the agreement.... When an issue, properly defined is within the terms of the collective bargaining agreement and the arbitrator's decision can in a rational way be derived from the terms of the agreement, one can say that the decision draws its 'essence' from the agreement, and reversal is not ·warranted even if a court believes the decision, though rational, is incorrect....

*Greater Johnstown Area Vocational–Technical School v. Greater Johnstown Area Vocational–Technical Education Association*, 520 Pa. 197, 199–200, 553 A.2d 913, 914–15 (1989), *affirming* 104 Pa.Commonwealth Ct. 191, 521 A.2d 965 (1987). With this standard in mind, we will review the· award of the arbitrator in the present case.

■ The collective bargaining agreement contained the following relevant provisions. Article V, Section A provides, "It is recognized that on occasion a grievance may arise between the Board and one or more of its professional employees, or between the Board and Association, relating to the interpretation, operation or application of this Agreement." Article VII, Section A provides that "[t]he salary schedules for the 1985–86, 1986–87 and 1987–88 school

years ... for professional employees covered by this Agreement are attached hereto as Appendices 1 through 5 respectively and made a part hereof." Finally, the preamble to the agreement provides, "Nothing contained herein, however, is intended to deny or restrict any professional employee of such rights as he/she may have under any constitutional, statutory, regulatory or decisional law." The parties agree that this last provision incorporates by reference the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. § 30, *as amended,* 24 P.S. § 1–101 et seq., and makes the School Code part of the collective bargaining agreement. Specifically, the arbitrator looked to two sections of the School Code. Section 1142(a) thereof provides:

Except as hereinafter provided, all school districts and vocational school districts shall pay all regular ... teachers ... the minimum salaries and increments for the school year 1968–1969 and each school year thereafter, as provided in the following tabulation in accordance with the column in which the professional employe is grouped and *the step which the professional employe has attained by years of experience within the school district* each step after step 1 constituting one year of service. When a school district, by agreement, places a professional employe on a step in the salary scale, each step thereafter shall constitute one year of service. *When a district adopts a salary scale in excess of the mandated scale, it shall not be deemed to have altered or increased the step which the employe has gained through years of service.*

24 P.S. § 11–1142 (Supp.1989–90) (emphasis added). Finally, Section 1149 of the School Code states:

The increments herein provided for are applicable *only where the beneficiaries thereof remain in the service of the same school district.* Where such teachers enter a new district they shall enter at a point in the schedule *to be agreed upon between said teachers and the employ-*

*ing districts*, which agreements shall be made a part of the contract between them.

24 P.S. § 11–1149.

In the present case, the Association argued to the arbitrator that a review of Sections 1142 and 1149 supported its position that the individual rehired teachers were entitled to credit for their past years of experience within the District. According to the Association, Section 1142 contained language that required a District to give credit to its teachers for all years of service within the District. Furthermore, the Association posited that Section 1149's limitation on the credit for experience was not applicable to the present case as that section allowed a district to deny credit for years of experience at another school district; the individual teachers involved here were seeking credit for years of experience within the same district. The arbitrator accepted the Association's position, sustained the grievance, ordered that the teachers be placed at the advanced step in the salary schedule and further ordered that those teachers be given back pay *from the date of the filing of the grievance.*

The District argues now, as it did in the Court of Common Pleas of Bucks County, that the arbitrator committed an error of law in sustaining the grievances. In support of its position, the District relies upon *Greater Johnstown.* Because of the importance of that case to the present controversy, a close analysis of that case is required.

In *Greater Johnstown,* the school district and the union representing the teacher signed a collective bargaining agreement which contained an express provision that if the professional work force was to be reduced, said reductions would be based upon departmental seniority. The agreement also contained a provision which incorporated the School Code by reference. Section 1125.1 [1] of the School Code provides in pertinent part:

(c) A school entity shall realign its professional staff so as to insure that more senior employes are provided with

---

**1.** Added by the Act of November 20, 1979, P.L. 465, *as amended,* 24 P.S. § 11–1125.1 (Supp.1989–90).

the opportunity to fill positions for which they are certificated and which are being filled by less senior employes.

. . . .

(e) Nothing contained in section 1125.1(a) through (d) shall be construed to supersede or preempt any provisions of a collective bargaining agreement negotiated by a school entity and the exclusive representative of the employes. . . .

The arbitrator ruled that Section 1125.1(c) of the School Code, incorporated by reference in the agreement, required that the school district realign its staff based on school wide seniority. The trial court affirmed and the school district appealed to this Court.

We reversed. 104 Pa.Commonwealth Ct. 191, 521 A.2d 965 (1987). As we stated, "when the rights of the parties under the agreement are dependent upon the interpretation of a *statute*, [the arbitrator] must follow well established case law relating to the statute as laid down by the courts." *Id.*, 104 Pa.Commonwealth Ct. at 197, 521 A.2d at 967 (emphasis in original). We then discussed a series of cases which had held that the method of realignment called for by the arbitrator was not mandated by Section 1125.1(c). We then went on to state, "The arbitrator in interpreting Section 1125.1(c) is bound by this clear precedent and because his determination is contrary to law, it cannot stand." 104 Pa.Commonwealth Ct. at 198, 521 A.2d at 968.

The education association then sought discretionary review from the Supreme Court which was allowed. Following review, the Court affirmed, holding that the arbitrator's interpretation of the collective bargaining agreement *could not be rationally derived from that agreement.* As the Court explained:

In the *clearest* of terms, Article V, Section B ... establishes that furloughs are to be governed by departmental seniority. There is absolutely no language in that provision indicating that departmental seniority was viewed by the parties as an incomplete method of assigning furloughs, such that reference to the Code would be neces-

sary. Indeed, if district-wide seniority had been intended by the parties to function in conjunction with departmental seniority in the manner suggested by the arbitrator, the parties would surely have provided some indication to that effect in the agreement.

*Greater Johnstown* at 202, 553 A.2d at 916 (emphasis in original). The Court then noted that the arbitrator, in using Section 1125.1(c), failed to even mention Section 1125.1(e) which permitted the parties to bargain away seniority rights guaranteed by the School Code. The Court then stated, "It is *inconceivable* that the parties would have agreed upon the unambiguous language in Article V, Section B while intending that such should be rendered essentially nugatory through application of the statutory savings clause and section 1125.1(c)." *Greater Johnstown* at 203–04, 553 A.2d at 916 (emphasis in original). The Court made no specific mention of our Court's holding concerning an arbitrator's interpretation of a statute which was contrary to established case law.

We believe that the District cannot prevail on the present appeal under either our standard or that enunciated by the Supreme Court in *Greater Johnstown.* We believe that the arbitrator's interpretation is rationally derived from the agreement and therefore draws its essence from that agreement. The collective bargaining agreement in this case has no provision which speaks to the question presented in the Association's grievance. This is in stark contrast to the agreement in *Greater Johnstown* which specified that furloughs were to be governed by departmental seniority. As the collective bargaining agreement in the present case does not speak to the precise question, that question is controlled by the statutory savings clause which incorporates the School Code into the agreement. Those two sections inarguably deal with the question involved. We cannot say that the arbitrator's interpretation is manifestly unreasonable and therefore violative of the essence test. *Philadelphia Housing Authority v. Union Of Security Officers # 1*, 500 Pa. 213, 455 A.2d 625 (1983). This conclusion is

strengthened when we view this case in light of the standard set forth this Court in *Greater Johnstown.*

As already mentioned, we have stated that an arbitrator is not free to disregard established case law interpreting statutes when those same statutes must be interpreted as part of a collective bargaining agreement. The District argues that two cases require a holding that the arbitrator misinterpreted Sections 1142 and 1149 of the School Code.

In *Wildrick v. Board of Directors of Sayre Area School District,* 27 Pa.Commonwealth Ct. 612, 367 A.2d 768 (1976), *vacated and remanded* 491 Pa. 25, 417 A.2d 617 (1980), teachers in the school district had claimed that they had been underpaid with regard to the minimums set forth in Section 1142 of the School Code. The district paid the teachers more than the mandated minimums under Section 1142 of the School Code. In an assumpsit action filed against the district, the teachers claimed that they were entitled to placement on the local salary schedules at the corresponding step in Section 1142 commensurate with their salaries. For example [2], a first year teacher in a district is being paid $10,000 while the minimum under state law for a first year teacher is $7000. On the state scale, a teacher making $10,000 would be at step four and on the local salary scale, a fourth year teacher would be entitled to a salary of $14,000. The teachers involved thus argued that as a first year teacher they were entitled to be paid $14,000. While the trial court accepted this argument, we disagreed and reversed, stating:

> We can find no language in the Code which requires a school district to apply to its *local* salary schedule that step in the *statutory* schedule which was intended by the Legislature to determine the minimum pay for teachers in the various categories. The law requires that a teacher with certain experience and qualifications be paid a certain salary and if a school district does that it has met its

---

**2.** For simplicity, the figures used are not those in *Wildrick* but are hypothetical.

> duty under the law. A school district may not pay less, but it has not been required to pay more.

27 Pa.Commonwealth Ct. at 618, 367 A.2d at 771 (emphasis in original). The Supreme Court agreed with this portion of our analysis; it vacated our order because it failed to reflect the school district's admission that five of the teachers had in fact been underpaid. *Wildrick* therefore has no relevance to the present dispute, because the Association here is arguing only that Sections 1142 and 1149 require the District to credit the teachers for years of service within the District. In *Wildrick*, the teachers were attempting to be placed on the local salary scale at a *level higher than represented by the years of experience within that district.*

The District also argues that the arbitrator's interpretation of Sections 1142 and 1149 is contrary to our decision in *Kipp v. Juniata County School District,* 87 Pa.Commonwealth Ct. 212, 487 A.2d 444 (1985). There, in another assumpsit action, a teacher sought to be compensated for underpayments of salary based upon both the local salary schedule and the mandated minimums in Section 1142. The trial court denied the claim in all respects. We relied upon the Supreme Court's affirmance of our holding in Wildrick to hold that the trial court was correct in denying the claim based upon the local salary schedule. We reversed, however, as to the claim based upon Section 1142. For ease of understanding, another example is useful. Using the prior example, let us further assume that step five under Section 1142 requires a teacher be paid $11,200. Step two of the local salary schedule requires payment of only $11,000. Step five of the local salary schedule requires a teacher be paid $15,000. While *Wildrick* requires a holding that the teacher is not entitled to the salary of $15,000, we did hold in *Kipp* that the teacher would be entitled to an additional $200 for year two on the local salary schedule. The teacher was entitled to be placed at the fifth step of Section 1142 because of the initial salary paid and was entitled to payment of the minimum salary required for step five thereun-

der, *and no more.*[3] *Kipp*, therefore, also provides no guidance on the exact question posed to the arbitrator in the present case. We therefore must reject the District's argument that the arbitrator's interpretation of Sections 1142 and 1149 was contrary to established case law.

In the present case, the arbitrator's interpretation of the collective bargaining agreement is rationally derived from that agreement. Furthermore, it does not run afoul of the holding of this Court in *Greater Johnstown*. Accordingly, we will affirm.

Former CRUMLISH, Jr., President Judge did not participate in the decision in this case.

## ORDER

NOW, June 5, 1990, the order of the court of Common Pleas of Bucks County, dated December 11, 1989, at No. 3489–13–6 April Term 1988, is affirmed.

---

**3.** Even this portion of *Kipp* is no longer the law with regard to teachers hired after 1968, the effective date of the last relevant amendment to Section 1142, Act of June 12, 1968, P.L. § 192, which added the following, "When a district adopts a salary scale in excess of the mandated scale, it shall not be deemed to have altered or increased the step which the employee has gained through years of service." 24 P.S. § 11–1142(a) (Supp.1989–90).