691 A.2d 924

**JUNIATA–MIFFLIN COUNTIES AREA VOCATIONAL–
TECHNICAL SCHOOL, Appellee**

v.

**Robert W. CORBIN, Appellant.**

Supreme Court of Pennsylvania.

Argued May 1, 1996.

Decided March 26, 1997.

William A. Hebe, Wellsboro, for R.W. Corbin.

John R. Miller, Jr., Bellefonte, for Vo–Tech School.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION

ZAPPALA, Justice.

We must determine whether the common pleas court erred in vacating an arbitration award on the ground that the grievance was not subject to arbitration. Because we find that the job security provisions of the Public School Code (Code), 24 P.S. §§ 1122–1123, are incorporated by reference into the collective bargaining agreement (Agreement), the arbitration award derived its essence from the Agreement. Thus, the grievance filed by Appellant is arbitrable and the Commonwealth Court erred in affirming the decision of the lower court.

Appellant, Robert W. Corbin, has been employed as an auto mechanic instructor by Appellee, the Juniata–Mifflin Counties Area Vocational–Technical School (School) since 1974 and is a tenured professional employee. He was given two unsatisfactory ratings by the School's Executive Director, Carolyn F. Foust, and its Chief School Administrator, Dr. Robert G.

Bohn. The ratings were given on June 9, 1992, and February 19, 1993. By letter of March 3, 1993, Appellant was notified that the Board of School Directors had voted to charge him with incompetency and persistent negligence pursuant to § 11–1122 of the Code.[1] Appellant was thereafter suspended with pay.

The Association of Mifflin County Educators (Association) filed a grievance on behalf of Appellant, contending that the proposed dismissal pursuant to the Code violated the Agreement's statutory savings clause, the provisions of Article VII dealing with professional compensation, and any actual or implied just cause provision. The Association notified the School by letter of March 9, 1993, that Appellant was electing his remedy pursuant to § 11–1133 of the Code[2] to proceed with grievance arbitration, rather than a hearing before the School Board. Although the School challenged the arbitrability of the grievance, the matter was eventually submitted to arbitration.[3]

The arbitrator, Elliot Newman, found that the statutory savings clause as set forth in Article XIV(A) of the Agreement incorporated the provisions of the Code relating to dismissals. That article provides as follows:

## XIV. RIGHTS OF PROFESSIONAL EMPLOYEES

### A. Statutory Savings Clause

1. Section 11–1122 of the Code sets forth the causes for termination of a contract of a professional employee. It provides that the only valid causes for termination are immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement, advocation of or participation in un-American or subversive doctrines, or persistent and wilful violation of the school laws.

2. Section 11–1133 provides that the Code shall not supersede or preempt a provision of a collective bargaining agreement "which agreement provides for the right of the exclusive representation to grieve and arbitrate the validity of a professional employee's termination for just cause or for the causes set forth in section 1122 of this act...." It further provides that "[p]rofessional employees shall have the right to file a grievance under the collective bargaining agreement or request a hearing pursuant to section 1122 through 1132, but not both."

3. Article II of the Agreement provided for a five level grievance procedure which culminated in arbitration. All steps of the procedure were followed by the parties.

Nothing contained herein shall be construed to deny any professional employee such rights as he/she may have under the Public School Code, or the Public Employees Relations Act 195, or other applicable state laws.

As further evidence that the parties intended the Agreement to apply to job security issues, the arbitrator referred to the prior case of Donald Hirakis, in which the Association and the School did not dispute the arbitrability of a grievance involving a demotion.[4] The arbitrator held that Appellant's grievance was cognizable under Article II(A) of the Agreement, which defines the term "grievance."[5] He concluded that because the statutory savings clause incorporated the Code into the Agreement, Appellant had the right to challenge the School's application of § 11–1122 of the Code through the grievance procedure.

Having determined that the matter was properly before him, the arbitrator sustained Appellant's grievance on the merits. He relied on § 11–1123 of the Code, which explains the rating system used in determining whether a professional employee shall be dismissed for incompetency. Because the School did not follow proper procedure regarding the second unsatisfactory rating given on February 19, 1993, the arbitrator concluded that the School failed to establish that Appellant was incompetent or persistently negligent under the Code.

Without addressing the merits of the grievance, the trial court vacated the arbitration award on the basis that the arbitrator did not possess jurisdiction. The court held that because the statutory savings clause did not contain job security provisions, it did not incorporate into the Agreement the dismissal provisions of the Code. It held that the savings clause merely provided that the Agreement did not *deny* any rights under the Code. The court concluded that had the

4. Arbitrator Thomas J. Ryan presided over the Hirakis case and the decision was rendered on August 19, 1991.

5. Article II(A) of the agreement provides:
   A. GRIEVANCE: A claim by a professional employee of the bargaining unit or by a group of the same, that there has been a misinterpretation, violation, or inequitable application of the terms of this Agreement.

parties intended to incorporate the dismissal provisions of the Code, they could have expressly done so.

The Commonwealth Court affirmed. It held that because the language in the savings clause was insufficient to incorporate the Code and the Agreement was silent as to the dismissal of professional employees, a grievance was not established. It also found that the Hirakis decision, in which the School did not dispute that the issue of demotion was arbitrable, was not evidence of past practice since it was merely a single instance. The court further relied on Article XIX of the Agreement which provides that management prerogatives are not subject to arbitration. Judge Doyle dissented without opinion.

█ As noted, we granted allocatur to determine whether the subject matter of Appellant's grievance was arbitrable. In *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977), our Court adopted the "essence test" as the appropriate standard of review of labor arbitration awards. Drawing its origins from federal decisional law, the essence test was first set forth in *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The United States Supreme Court there stated that

> [t]he essence test requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute. Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court.

*Id.* at 599, 80 S.Ct. at 1362, 4 L.Ed.2d at 1429 (footnote omitted). The rationale behind the test is that the parties bargained for the arbitrator's construction of their collective bargaining agreement and, if the arbitrator's decision concerns the construction of the contract, the court has no business overruling the decision merely because it interprets the contract differently. *Leechburg Area School District v. Dale*, 492 Pa. 515, 520–521, 424 A.2d 1309, 1312–1313 (1981).

The Association contends that the lower courts ignored this narrow standard of review and substituted their interpretation of the Agreement for that of the arbitrator. It concedes that the savings clause does not on its face incorporate the job security provisions of the Code, but submits that the language in the clause providing that, "nothing contained herein shall be construed to deny any professional employee such rights as he/she may have under the Public School Code ..." can reasonably be interpreted as incorporating those rights granted by the Code. It submits that because the Code is therefore a part of the Agreement, a dispute over the application of the Code provisions concerning professional employee dismissals constitutes a grievance as defined by the parties.

The School asserts that the Agreement is silent as to job security issues and does not contain a "just cause" provision. It argues that the Association relies on the negative language in the statutory savings clause, which does not grant rights or incorporate the job security and dismissal procedures of the Code. The School further contends that more specific language was utilized in cases where the courts found that the Code was incorporated into the collective bargaining agreement.

For example, in *Rylke v. Portage Area School District,* 473 Pa. 481, 375 A.2d 692 (1977), a grievance involving a suspension of a professional employee was found to be arbitrable on the ground that a provision in the collective bargaining agreement rendered the Code a part of the agreement. That provision stated

> The Pennsylvania School Code includes certain job security provisions, certification, and other regulatory provisions associated with various classes of employes. The parties hereby aver that such provisions of the School Code represent their complete agreement, and that said provisions shall govern the manner in which the job security, job progression, and reduction in force practices shall be effected with respect to members of the bargaining unit.

*Id.* at 485, 375 A.2d at 693. Similarly, in *Wilson Area Education Association v. Wilson Area School Dist.,* 90 Pa.

Cmwlth. 151, 494 A.2d 506 (1985) and *North Star School District v. North Star Education Association*, 155 Pa.Cmwlth. 368, 625 A.2d 159 (1993), provisions in the collective bargaining agreements expressly incorporated the job security provisions of the Code.

Although the intentions of the parties in the instant matter are not as clearly set forth in the Agreement as in the aforementioned cases, we find that the language employed was sufficient for the arbitrator to conclude that the Code was incorporated into the Agreement. In *Centennial School District v. Centennial Education Association*, 133 Pa.Cmwlth. 382, 576 A.2d 99 (1990), the collective bargaining agreement contained language similar to that set forth in the instant savings clause.[6] The parties in *Centennial* agreed that the provision incorporated by reference the Public School Code and made it a part of the collective bargaining agreement. We acknowledge that because such a construction was agreed upon by the parties and was not directed by the court, it is not necessarily indicative of the intention of the parties here. However, we find this relevant as it demonstrates that the decision of the arbitrator was a rational one.

■  An arbitration award, including the arbitrator's definition of his own jurisdiction, must be affirmed so long as the award is in any *rational* way derived from the collective bargaining agreement "viewed in light of its language, its context, and any other indicia of the parties' intention. . . ." *Port Authority of Allegheny County v. Amalgamated Transit Union, Division 85*, 492 Pa. 494, 497, 424 A.2d 1299, 1300 (1981), citing, *Community College of Beaver County*, 473 Pa. at 594, 375 A.2d at 1275.

Additional evidence of the parties' intent is found in their treatment of the savings clause in a previous case governed by the Agreement. We reject the Commonwealth Court's conclu-

6. The preamble to the collective bargaining agreement in *Centennial* provided, "Nothing contained herein, however, is intended to deny or restrict any professional employee of such rights as he/she may have under any constitutional, statutory, regulatory or decisional law." *Id.* at 385, 576 A.2d at 101,

sion that the arbitrator improperly considered the Hirakis case as a "past practice" of the parties. Relying upon a definition of "past practice" enunciated in *County of Allegheny v. Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 381 A.2d 849 (1978),[7] the court found that a single instance of the School's submission to arbitration of a grievance arising out of the realignment of its professional staff was insufficient to establish a "practice." Whether a past practice was established, however, is irrelevant since the arbitrator merely concluded that the parties had previously acknowledged that the Code was incorporated into the Agreement as evidenced by their submission to arbitration of a similar dispute concerning the School's application of the Code. Thus, the arbitrator cited the Hirakis decision only as evidence of the parties' intent.[8]

Furthermore, we reject the argument that Article XIX of the Agreement, which provides that "management functions and prerogatives" are not subject to arbitration, divests the arbitrator of authority over the grievance. The court conceded that the phrase "management prerogatives" was not defined in the Agreement, but found that such terms include the decision to dismiss an employee on competency grounds. This argument is unpersuasive since such an interpretation is overly broad. See generally *Rylke v. Portage Area School*

7. We there stated in pertinent part,

A custom or practice is not something which arises simply because a given course of conduct has been pursued by management or the employees on one or more occasions. A custom or practice is a usage evolved by men as a normal reaction to a recurring type situation. It must be shown to be the accepted course of conduct characteristically repeated in response to the given set of underlying circumstances.

*Id.* at 34 n. 12, 381 A.2d at 852 n. 12.

8. The School asserts that in two other cases involving the Juniata–Mifflin Counties Area Vocational–Technical School, which were consolidated at *Reed v. Juniata–Mifflin Counties AVT School,* 112 Pa.Cmwlth. 529, 535 A.2d 1229 (1988), the question of demotion proceeded through Board hearings and was appealed to the Secretary of Education, and ultimately the Commonwealth Court. Merely because the teachers in *Reed* did not choose to proceed through the grievance procedure does not mean that the alternative was not available to them. See 24 P.S. § 11–1133.

*District,* 473 Pa. 481, 375 A.2d 692 (1977) (Although 43 P.S. § 1101.702 provides that public employers are not required to bargain over matters of "inherent managerial policy," such terms do not encompass an employee's suspension).

■ In summary, as the subject matter of Appellant's claim is within the purview of the essence of the Agreement, judicial intrusion into the arbitration process was unwarranted. The lower courts therefore erred in substituting their interpretation of the Agreement for that of the arbitrator. Where an arbitrator has interpreted a collective bargaining agreement in favor of the arbitrability of the grievance before him, a reviewing court should be slow indeed to disagree. *Scranton Federation of Teachers v. Scranton School District,* 498 Pa. 58, 66, 444 A.2d 1144, 1147 (1982).

Accordingly, the decision of the Commonwealth Court is reversed and the award of the arbitrator is reinstated.

NIX, former C.J., and NEWMAN, J., did not participate in the consideration or decision of this case.

FLAHERTY, J., files a dissenting opinion.

FLAHERTY, Chief Justice, dissenting.

The contractual language at issue in this case provides:

Nothing contained herein shall be construed to deny any professional employee such rights as he/she may have under the Public School Code, or the Public Employees Relations Act 195, or other applicable state laws.

This language does not incorporate the School Code into the contract; it merely provides a framework which can be used to interpret the contract itself: nothing in the contract shall be construed to deny an employee rights which he or she would have under the code.

Accordingly, I would affirm the Commonwealth Court's affirmance of the trial court's vacation of the arbitration award, since the arbitrator had no jurisdiction.