**Montgomery County Intermediate Unit v. Montgomery County Intermediate Unit Education Association**

C.P. of Montgomery County, no. 00-04617.

*Wendy G. Rothstein,* for appellees.
*Charles L. Herring,* for appellants.

FURBER, *J.,* September 26, 2001—This opinion is necessitated as a result of the appeal of the Montgomery County Intermediate Unit Education Association and Perkiomen Valley Education Association to this court's

order dated July 21, 2001, which order vacated the arbitration award decision of Arbitrator Joseph B. Bloom.

## FACTS AND PROCEDURAL HISTORY

This matter involves a public-sector labor dispute between the following parties: the appellees (employers) are the Montgomery County Intermediate Unit and the Perkiomen Valley School District respectively, both organized under the Pennsylvania School Code (24 Pa.C.S. §11-1101 et seq.) and operating as public employers under the Pennsylvania Public Employee Relations Act (Act 195—43 P.S. §1101.101 et seq.). The appellants (associations) are the Montgomery County Intermediate Unit Education Association and the Perkiomen Valley Education Association respectively, both unincorporated associations and labor organizations under Act 195. The employers and associations are parties to individual collective bargaining agreements governing some, but not all, of the terms and conditions of employment of certain of their professional employees.

The immediate underlying causes of action at issue involve separate terminations by each of the employers of a professional employee represented by each of the associations. Each employer, acting pursuant to, and in conformity with, the substantive and procedural provisions of the Pennsylvania School Code, moved to terminate the employment of their professional employee. Subsequent to the terminations, the associations sought to grieve said terminations under their collective bargaining agreements. In each instance, the employer asserted that the terminations were not subject to the grievance provi-

sions contained within their collective bargaining agreement but, rather, were governed by school code procedures. The associations then demanded arbitration of the terminations under their agreements.

By agreement of the parties, the cases were consolidated on the threshold issue of contractual arbitrability and a hearing was conducted before Arbitrator Joseph B. Bloom on October 25, 1999. On February 16, 2000, Arbitrator Bloom issued a decision and award concluding that both termination disputes were arbitrable under the respective agreements.

The employers filed a "petition for review of an arbitration award/vacate arbitration award" with this court, and the associations filed a "petition to quash appeal of arbitration award" in response. Argument on the quashed motion was heard before the undersigned, and this court denied said petition by order dated September 5, 2000. The associations appealed said order, and the Commonwealth Court of Pennsylvania dismissed their filing as having been taken from an interlocutory decision on October 3, 2000 (no. 2207 C.D. 2000).

This court thereafter conducted oral argument on the employers' underlying petition for review, and on July 18, 2001, we granted said petition and vacated the arbitration award. Our order stayed any further arbitration proceedings, directed the parties to proceed through the statutory provisions mandated by the school code, and remanded the matter to the individual school boards to conduct hearings on the terminations.

The associations filed a timely notice of appeal of the above order on August 6, 2001.

## ISSUES

The appellants/associations set forth nine issues in their concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b):

(1) Whether the court properly applied the appropriate scope of the review/essence test as articulated by the Pennsylvania Supreme Court in *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA-NEA),* 560 Pa. 135, 743 A.2d 405 (1999);

(2) Whether the court allowed appropriate deference to the arbitrator's award pursuant to the Pennsylvania Supreme Court's ruling in *Danville Area School District v. Danville Area Education Association, PSEA/NEA,* 562 Pa. 238, 245, 754 A.2d 1255, 1258 (2000) and *Cheney, supra,* 743 A.2d at 416;

(3) Whether the court erred by rendering a decision as a "super-arbitrator" in ruling on a labor arbitration opinion;

(4) Whether the court's decision is consistent with the Commonwealth Court's recent decision in *United School District v. United Education Association,* 2001 WL 876860 (Pa. Commw. 2001);

(5) Whether the court considered facts not of record when rendering its decision;

(6) Whether the court's order was consistent in applying the standard that the threshold issue of arbitrability is the exclusive province of the arbitrator;

(7) Whether the court erred by "permitting an interlocutory appeal to proceed forward, that being merely a

portion of an arbitration proceeding" and not bifurcating the matter;

(8) Whether the court's order consistently applied the law as related to implied just cause; and,

(9) Whether the court's order was consistent with the law established by the Supreme Court of Pennsylvania in *Mifflinburg Area Education Association v. Mifflinburg Area School District,* 555 Pa. 326, 724 A.2d 339 (1999).

The court has consolidated these issues for the purposes of a cohesive discussion as follows below.

## DISCUSSION

As stipulated by the parties, the sole issue presented to Arbitrator Joseph B. Bloom was whether the grievances of the associations' terminated employees were arbitrable. The arbitrator's specific analysis of the issue and ultimate determination was stated as follows:

"Neither the Perkiomen Valley collective bargaining agreement nor the Montgomery County IU collective bargaining agreement include a statutory savings clause or a just cause provision. The bargaining agreements do include formal grievance procedures ending in binding arbitration.

"There is no language in either collective bargaining agreement referring to discipline, discharge or just cause. The definitions of a grievance in each agreement, however, do not specify that the employers have retained the right to discipline and/or discharge without restriction. Absent such a clear and unambiguous authority on the part of the employers, it is logical to conclude that each collective bargaining agreement, without a clear proviso

to the contrary, implies a just cause limitation, that is, the employers are contractually obligated in matters of disciplinary actions to act with just cause.

"Now, considering that the collective bargaining agreements both have implied just cause provisions, the position of the association as to the applicability of the school code to the existing collective bargaining agreements becomes quite tenable. I find, therefore, that the grievances are arbitrable.

"Award: The Montgomery County I.U. and the Perkiomen Valley collective bargaining agreements contain just cause limitations; they are subject, therefore, to the election of remedies provision of the Pennsylvania School Code. The grievances, then, are arbitrable." [1]

## I. *The Arbitrator's Award Did Not Derive Its Essence From the Collective Bargaining Agreements*

The jurisdictional determination of whether a grievance is arbitrable must be presented first to the arbitrator and then will be "subject to appropriate court review of any award in conflict" with the collective bargaining agreements at issue and the "fundamental statutory policies of this Commonwealth." *Pennsylvania Labor Relations Board v. Bald Eagle Area School District,* 499 Pa. 62, 68, 451 A.2d 671, 674 (1982). Then, the "arbitration award, including the arbitrator's definition of his own jurisdiction, must be affirmed so long as the award is in any *rational* way derived from the collective bargaining

---

1. *In the Matter of the Arbitration Between Montgomery Co. IU & Perkiomen Valley S.D. and Montgomery Co. IU & Perkiomen Valley Education Association,* opinion and award [Joseph B. Bloom, Arbitrator], 02-16-00 at 9-10.

agreement 'viewed in light of its language, its context, and any other indicia of the parties' intention . . . .' " *Juniata-Mifflin Counties Area Vocational-Technical School v. Corbin,* 547 Pa. 495, 501, 691 A.2d 924, 927 (1997). (emphasis in original) [citations omitted] Nonetheless, where an "arbitrator's words exhibit an infidelity to the agreement, courts have no choice but to refuse enforcement of an award," because "an arbitrator is confined to the interpretation and application of the collective bargaining agreement and does not sit to dispense his or her own brand of industrial justice." *Riverview School District v. Riverview Education Association (PSEA/NEA),* 162 Pa. Commw. 644, 650-51, 639 A.2d 974, 977 (1994), *appeal denied,* 540 Pa. 588, 655 A.2d 518 (1995). [citations omitted]

The Supreme Court of Pennsylvania has determined that a very specific exception exists to the doctrine of finality that typically cloaks the decisions of PERA labor arbitrators. First articulated by the court in its 1997 holding in the matter of *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),*[2] the standard is clear that, notwithstanding giving such awards much deference, the "arbitrator's award must draw its essence from the collective bargaining agreement." *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA-NEA),* 560 Pa. 135, 150, 743 A.2d 405, 413 (1999). The *Cheyney University* court thus established the following guidelines for the manner in which a court should analyze, and could thereafter vacate, an arbitration award:

2. 473 Pa. 576, 375 A.2d 1267 (1977).

"Pursuant to the essence test as stated today, a reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *Id.* (footnotes omitted)

## A. The Issue of Whether the Grievances Were Arbitrable Was Not Within the Terms of the Collective Bargaining Agreements

The parties in the case at bar stipulated before Arbitrator Bloom that the sole issue was whether, using the parties' collective bargaining agreements and applicable law, the grievances involving the termination of two professional employees could be arbitrated or, on the contrary, needed to proceed through the statutory provisions mandated by the Pennsylvania School Code, 24 P.S. §11-1101 et seq. Of special significance to our analysis herein are three particular school code sections and procedures, which state in pertinent part as follows:

*"24 P.S. §11-1122. Causes for termination of contract.*

"The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality, incompetency, intemper-

ance, cruelty, persistent negligence, mental derangement, advocation of or participating in un-American or subversive doctrines, persistent and willful violation of the school laws of this Commonwealth on the part of the professional employee . . .

*"24 P.S. §11-1127. Procedure on dismissals; charges; notice; hearing.*

"[Provides for a written statement of charges, a hearing before the school board, written notice of the hearing, opportunity to be heard in person and/or by counsel, and the compilation of an official record in accordance with constitutional due process requirements.]

*"24 P.S. §11-1133. Collective bargaining for public employes*

*"Nothing contained in sections 1121 through 1132 shall be construed to supersede or preempt a provision of a collective bargaining agreement in effect* on July 23, 1970, or on any date subsequent thereto, *negotiated by a school entity and an exclusive representative of the employes in accordance with the Act of July 23, 1970* (P.L. 563, no. 195), known as the 'Public Employe Relations Act,' *which agreement provides for the right of the exclusive representative to grieve and arbitrate the validity of a professional employe's termination for just cause or for the causes set forth in section 1122 of this Act; . . . Professional employes shall have the right to file a grievance under the collective bargaining agreement or request a hearing pursuant to section 1121 through 1132, but not both."* (emphasis added)

It is clear from the statutory language that section 1133 of the Pennsylvania School Code grants professional

employees the right to grieve and arbitrate terminations only if the collective bargaining agreement provides that right. The Commonwealth Court analyzed the implications inherent to this section of the school code in *Phoenixville Area School District v. Phoenixville Area Education Association,* 154 Pa. Commw. 438, 624 A.2d 1083 (1993), *overruled on other grounds, Chester Upland School District v. McLaughlin,* 655 A.2d 621 (Pa. Commw. 1995):

"Despite the fact that the school code provides a right of election, it does not grant an absolute and automatic right to grieve/arbitrate the matter of termination for cause. It merely guarantees that the statutory provisions covering termination of a professional employee will not preempt a collective bargaining agreement and that the provisions of a collective bargaining agreement will not override the statute. The election cannot be made if the collective bargaining agreement does not apply to terminations." *Id.,* 154 Pa. Commw. at 444-45, 624 A.2d at 1086-87.

The collective bargaining agreements at issue herein limit the application of the grievance and arbitration procedure to only those disputes involving the provisions of each agreement. Neither agreement contains a provision concerning the termination of professional employees and the arbitrability of grieving such termination. Arbitrator Bloom further stated in his opinion and award that:

"Neither . . . collective bargaining agreement include[s] a statutory savings clause [n]or a just cause provision . . . .

"There is no language in either collective bargaining agreement referring to discipline, discharge or just cause." *Id.* at 9.

However, because the definitions of a "grievance" in each agreement did *not* specifically state that the employers retained the right to discipline or discharge professional employees without restriction, Arbitrator Bloom found that "it is logical to conclude that each collective bargaining agreement, without a clear proviso to the contrary, *implies a just cause limitation,* that is, the employers are contractually obligated in matters of disciplinary actions to act with just cause." [3] Therefore, it was apparently the absence of empowering language pertaining to the employers that served to empower the associations by implication.

Based upon his finding of implied just cause, then, we assume that Arbitrator Bloom adopted the associations' position that the school code was incorporated into their collective bargaining agreements and, thus, found that the grievances were arbitrable by operation of the aforementioned section 1133.

The associations suggest that the Commonwealth Court has held that a party's grievance regarding a teacher's discipline, when the collective bargaining agreement contains no provision relating to discipline, may be deemed arbitrable based upon the theory of implied just cause in *North East Education Association v. North East School District,* 117 Pa. Commw. 19, 542 A.2d 1053 (1988). The arbitrator found arbitrability on the basis of an "implied just cause for discipline" provision in the collective bargaining agreement. We determine that the implication of just cause therein related solely to the teacher's grievance because the discipline involved his

---

3. *Id.* (footnote omitted) (emphasis added)

suspension, and not his termination. The school code does not provide any due process protection for the suspension of a teacher by virtue of a "just cause" provision. The school code does, however, include "just cause" language regarding a teacher's termination. *North East Education Association* is to be narrowly construed.

This court concludes that Arbitrator Bloom's analysis lacks any foundation, because the issue of whether the grievances were arbitrable, as defined by the parties, was *not* within the terms of their collective bargaining agreements and fails, therefore, to satisfy the first prong of the "essence" test as articulated in *Cheyney University, supra.* An arbitrator exceeds the scope of his authority when the language of the agreements, or lack of language in the agreements, represents the very antithesis of his conclusion. Arbitrator Bloom's award addressed an issue completely beyond the scope of the agreements.

B. The Arbitrator's Interpretation Was Not Rationally Derived From the Collective Bargaining Agreements

The court also finds that Arbitrator Bloom's award should be vacated because his conclusion that the issue of termination grievances was arbitrable is not rationally derived from the collective bargaining agreements, and, thus, the second prong of the "essence" test also fails to be satisfied. The arbitrator's interpretation that the disputes were arbitrable because the agreements contained implied just cause requirements for disciplinary action is not a rational derivation.

"Under Act 195, it is for the parties to agree upon the arbitration procedure to be used." *Cheyney, supra,* 560 Pa. at 143, 743 A.2d at 410. As discussed above, both

agreements limit the application of their respective grievance and arbitration procedure to disputes involving the provisions contained within the agreements.[4] All parties to this controversy agree that neither agreement contains any of the following: a statutory savings clause; a just cause provision; or any language referring to discipline, discharge, just cause, or the election of remedies. The clear language of these collective bargaining agreements, therefore, does not satisfy the requirements of section 11-1133 of the school code.[5]

Additionally, the transcript from the hearing before Arbitrator Bloom[6] reveals that the associations never raised as an issue, argued, or presented evidence or testimony regarding the concept of an "implied just cause provision." The position taken by the associations at the hearing relates exclusively to their argument that the Pennsylvania Supreme Court rulings in *Juniata-Mifflin Counties Area Vocational-Technical School v. Corbin, supra,* and *Mifflinburg Area Education Association v. Mifflinburg Area School District, supra,* and the Snyder County Court of Common Pleas decision in *Selinsgrove Area School District v. Selinsgrove Area Education Association,* no. 306-1999 (Snyder Cty. 09-23-99), control the de-

---

4. Professional agreement between Montgomery County Intermediate Unit Board of Directors and the Montgomery County Intermediate Unit no. 23 Education Association, PSEA-NEA (November 1997) at 3. (Exhibit "A" of employers' petition.) Agreement on terms and conditions of employment Perkiomen Valley School Board and Perkiomen Valley Education Association (September 1, 1995-August 31, 1999) at 23. (Exhibit "B" of employers' petition.)

5. *Supra.*

6. Hearing before arbitrator Joseph B. Bloom, 10-25-99, exhibit "C" of employers' petition.

termination in this matter.[7] The associations were merely content to rest their case on the above-cited judicial determinations and of the school code without any reference to the theory of implied just cause.

The arbitrator's decision to imply a "just cause" provision in these collective bargaining agreements makes as little logical sense, and lacks as much legal justification, as implying a "statutory savings clause" or implying an "election of remedies" provision. As stated previously, although section 11-1133 of the school code provides for a right of election between statutory and contractual remedies, it is not an "absolute and automatic right to grieve/arbitrate the matter of termination for cause." *Phoenixville Area School District, supra,* 154 Pa. Commw. at 444, 624 A.2d at 1086. The parties involved must bargain for the inclusion of a "just cause" provision in their collective bargaining agreement as a condition precedent to their statutory right to election of remedies. Section 11-1122 of the school code provides narrowly enumerated grounds for the termination of professional employees. The code, itself, does not incorporate a "just cause" standard in any section. Absent the specific contractual language we find necessary, it is simply not possible to infer that the parties to these agreements intended to imply their existence. The construction of written contracts has no room for innuendo. Contractual obligations that are implied by law or inferred by the conduct of the parties do not encompass the collective bargaining arena, which manifests the intentions of the parties through what is actually written and not language, which is absent.

7. Hearing, *supra* at 13-23.

Arbitrator Bloom's ruling that the grievance of termination disputes was arbitrable was solely as a result of his finding the condition precedent—implied contractual just cause. We do not concur that the agreements contained such an implied just cause provision. The arbitrator's conclusion was not rationally derived from the agreements and the second prong of the "essence" test has not been satisfied.

## II. *The* Mifflinburg *and* Juniata-Mifflin *Decisions Do Not Stand for the Proposition That Every Collective Bargaining Agreement Permits the Arbitrability of Professional Employee Terminations by Operation of the School Code*

Prior to the Pennsylvania Supreme Court's 1997 decision in *Juniata-Mifflin* and 1999 decision in *Mifflinburg,* the parties agree that the law concerning this issue was clear.[8] If a collective bargaining agreement contained no just cause provision or election of remedies provision, there was no right to arbitration. As discussed below, this court does not believe the Supreme Court has completely altered the law of contractual bargaining and statutory application by rendering its decisions in these two cases. Rather, a correct analysis shows that the law was properly applied therein based upon the specific language of the collective bargaining agreements at issue.

The factual scenario in *Juniata-Mifflin* involved a teachers' union, which sought to arbitrate the dismissal

---

8. Indeed, during oral argument before the undersigned, counsels for the parties further agreed that "but for" footnote 5 of *Mifflinburg,* they would not have petitioned the court to hear this dispute.

of a teacher under the terms of its collective bargaining. The agreement did not contain a just cause for termination provision, but it did expressly contain a statutory savings clause. The savings clause stated that nothing in the agreement could be construed to deny professional employees such rights as he or she might have under the school code. The statutory savings clause, therefore, expressly served to incorporate the school code into the agreement thus allowing the parties to submit their grievance to binding arbitration. The *Juniata-Mifflin* court reiterated that the arbitrator's award, including a finding of his own jurisdiction, "must be affirmed so long as the award is in any *rational* way derived from the collective bargaining agreement 'viewed in light of its language, its context, and any other indicia of the parties' intention . . . .' " *Id.*, 547 Pa. at 501, 691 A.2d at 927. (citations omitted) (emphasis in original) Thus, the Supreme Court determined that the presence of the statutory savings clause in this collective bargaining agreement, and the prior practices of the parties in previously submitting teacher terminations to arbitration, formed a sufficient basis for the arbitrator to find that the parties *intended* to allow arbitration in the instant matter, as well. *Id.*, 547 Pa. at 499-503, 691 A.2d at 926-28.

As stated previously, the agreements at issue here do not contain a statutory savings clause nor was any evidence presented that prior professional employee terminations had been submitted to arbitration. We conclude that the proof of these parties' intent, therefore, is evidenced by the absence of the statutory savings clause.

Two years hence, the Supreme Court rendered the *Mifflinburg* decision. Significantly, *Mifflinburg* did not

involve a determination about the arbitrability of termination grievances. Arbitrability was never raised by the parties or in any way addressed by the court. Rather, the facts at issue pertained to the court's analysis of section 11-1142 of the school code, which it interpreted as guaranteeing credit for prior years of service to teachers who were rehired when computing salary scales. Thus, when the arbitrator's award failed to grant the teachers such credit, the court found that the ruling was neither derived from the essence of the parties' collective bargaining agreement nor in conformance with the school code. The court relied on the "essence" test it had first articulated in *Community College of Beaver County, supra,* as well as the following:

"Section 1121 of the school code requires that all contracts between school districts and professional employees contain a clause stating that none of the provisions of the school code may be waived by school district employees. In addition, section 703 of the Public Employe Relations Act prohibits the parties from effecting or implementing a provision in a collective bargaining agreement if implementation of that provision would violate or be inconsistent with a statutory enactment. 43 P.S. §1101.703. Thus, by statute, actions taken pursuant to a collective bargaining agreement cannot violate the school code." *Mifflinburg, supra,* 555 Pa. at 330, 724 A.2d at 342.

In other words, the parties to a collective bargaining agreement are not permitted to contractually violate any provision of the school code.

The *Mifflinburg* panel based its determination on a prior Commonwealth Court ruling in *Centennial School*

*District v. Centennial Education Association,* 133 Pa. Commw. 382, 576 A.2d 99 (1990). *Centennial* also involved professional employees who had resigned, were rehired by the school district, and upon rehiring were placed on the same salary step level as newly hired teachers. The teachers' association filed grievances alleging that payments on the lower salary schedule violated the terms of their collective bargaining agreement. The arbitrator agreed and held that "the collective bargaining agreement required that rehired teachers were entitled to credit for the prior years of teaching within the district under sections 1142 and 1149 of the school code. The Commonwealth Court upheld the arbitrator's decision, finding that the arbitrator's award drew its essence from the collective bargaining agreement." *Mifflinburg, supra,* 555 Pa. at 332-33, 724 A.2d at 343. (footnote omitted) The court then footnotes this analysis of the *Centennial* ruling and states the following, as footnote 5 to its opinion:

"The *Centennial* court based its decision, in part, on the fact that the collective bargaining agreement contained a statutory savings clause that explicitly incorporated the provisions of the school code. However, as noted above, section 1121 of the school code provides that the statutory mandates of the school code cannot be waived 'orally or in writing.' 24 P.S. §11-1121. In addition, the Pennsylvania Employe Relations Act prevents the parties from implementing collective bargaining agreement provisions that are inconsistent with or conflict with any statute. 43 P.S. §1101.73. *Therefore, express language in the agreement incorporating the provisions of the school code is not necessary because such provisions*

*are incorporated, by operation of law." Id.* at 333 n.5, 724 A.2d at 343 n.5. (emphasis added)

It is the conclusion of this court, that the language we have emphasized in the above-cited footnote directly refers to any language in the *Centennial* collective bargaining agreement, or actions taken by the parties pursuant to the agreement, that may have violated any section of the school code. Further, this language does *not* require the incorporation of every provision of the school code, and the potential for the arbitration of every grievance, into every collective bargaining agreement. We reason that the *Mifflinburg* panel would not have chosen a footnote as the vehicle by which it would substantively change either statutory law or the contractual collective bargaining rights of teachers and their school districts. To analyze this footnote's language in any broader, sweeping context would be inconsistent with the Statutory Construction Act,[9] in addition to section 11-1133 of the school code which reserves the right of collective bargaining units to negotiate for the ability to arbitrate professional employee terminations.

In this case, the parties do not claim that any provision of their collective bargaining agreement is contrary to or violates any provision of the school code. Also, and unlike the issue involving a grievance of salary step credits about which the agreements in *Mifflinburg* did not contain any right to a hearing, the due process rights of a terminated teacher are protected by the school code via section 11-1127, which provides for the absolute right to a hearing if a teacher disagrees with the reasons for termination.

---

9. 1 P.S. §1901 et seq.

The association also argued that the Common Pleas Court of Snyder County, performing in its appellate capacity to review an arbitration decision, rendered a precedential determination involving footnote 5 in *Selinsgrove Area School District v. Selinsgrove Area Education Association,* no. 306-1999 (Snyder Cty. 09-23-99). The *Selinsgrove* court affirmed an arbitrator's determination that the denial of travel sabbaticals was arbitrable because the school code provision on sabbaticals, section 11-1166, was incorporated into the collective bargaining agreements because footnote 5 of *Mifflinburg* now mandates that the entire school code is incorporated into every collective bargaining agreement. We disagree. As to the merits of the *Selinsgrove* decision, we also conclude that the facts are again completely dissimilar to the case at bar. Like the situation in *Mifflinburg,* and unlike the instant matter, *Selinsgrove* involved the school entity's violation of a specific section of the school code, which agreement did not also have a separate provision to protect the employee's due process rights if the statute was violated. Additionally, a Snyder County Court of Common Pleas' ruling, however well-reasoned, does not represent precedential authority for any other common pleas court, and would not be relevant under the doctrine of the law of the case, res judicata, or collateral estoppel.

We find, therefore, that the Pennsylvania Supreme Court's rulings in *Juniata-Mifflin* and *Mifflinburg,* and the Snyder County Court of Common Pleas' ruling in *Selinsgrove* do not operate as a bar to our determination herein.

### III. *The Court Afforded Due Deference to Arbitrator Bloom's Ruling, But It Was Not Derived From the Essence of the Parties' Collective Bargaining Agreements*

As discussed in section I, *supra,* allowing appropriate deference to Arbitrator Bloom's ruling does not permit this court to ignore either of the prongs of the essence test. The arbitrator's determination fails to satisfy the requirements of that test as it was not derived from the essence of the parties' collective bargaining agreements. Our decision is, therefore, consistent with both *Danville Area School District v. Danville Area Education Association,* 562 Pa. 238, 754 A.2d 1255 (2000) and *Cheyney, supra.*

### IV. *The Court's Ruling Is Not Inconsistent With* United School District v. United Education Association

The Commonwealth Court of Pennsylvania has recently re-affirmed its application of the "essence test" in *United School District v. United Education Association,* 2001 WL 876860 (Pa. Commw. 2001). In its review of prior judicial determinations and rendering its decision in the matter before it, the *United School District* court stated clearly:

"Under these circumstances, that is, where a legal ruling, albeit erroneous, has not deprived a party of a fair and complete opportunity to present his case, we believe that we are neither bound by the error nor authorized to impose a remedy for the error itself. Rather, the correct standard of review remains the essence test, although in

applying the test we need not view the evidence from the perspective of the arbitrator's flawed legal reasoning. Put another way, for purposes of our review, it makes no difference whether the arbitrator has refused to consider evidence because of an erroneous legal ruling, or has simply as fact-finder attached no significance to it. In either situation, we must review the entire record, including any evidence which the arbitrator has credited but disregarded, to determine whether 'the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention . . . .' " *Id.,* 2001 WL 876860. (citing *Beaver County, supra*)

This court agrees with the standard as defined above, and believes that our application of the essence test is a consistent application of that standard.

### V. *As This Case Concerns an Issue of "First Impression," the Trial Court Has Properly Considered Arbitrator Bloom's Ruling To Be Immediately Appealable*

The parties to this action explicitly agreed to bifurcate the determination of arbitrability from the underlying merits of the two individual termination disputes.[10] Neither party stated or inferred that the arbitrator's determination should not be immediately appealable.[11] We consider the issue to be one of "first impression:" whether

---

10. Hearing, *supra* at 7-8.

11. *Id.* This case is, therefore, both legally and factually dissimilar from *State System of Higher Education v. Association of Pennsylvania State College and University Faculties,* 121 Pa. Commw. 607, 550 A.2d 1385 (1988).

*Mifflinburg* footnote 5 now mandates that every collective bargaining agreement permits the arbitrability of professional employee terminations by operation of the school code, notwithstanding what the parties to the agreement have bargained for, or what language they chose to include or exclude such a process within their collective bargaining agreement. Thus, in the interest of judicial economy, this court considers Arbitrator Bloom's ruling a final order on that single issue.

For the reasons cited above, the court's order granting the employers' petition for review of an arbitration award/vacate award and the vacating of that award should be affirmed, and the associations' appeal of that order dismissed.