754 A.2d 1255

**DANVILLE AREA SCHOOL DISTRICT, Appellee,**

v.

**DANVILLE AREA EDUCATION ASSOCIATION, PSEA/NEA, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 16, 1998.

Decided July 19, 2000.

240

Charles L. Herring, Deanna Kaplan Tanner, Philadelphia, for appellant Danville Area Educ. Ass'n PSEA/NEA.

Stephen S. Russell, New Cumberland, for appellee, Danville Area School Dist.

Before FLAHERTY, C.J., ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ

*OPINION*

CAPPY, Justice.

We granted allocatur to review the Commonwealth Court's decision that vacated a labor arbitration award in favor of a retired public school teacher. For the reasons discussed below, we find that the arbitrator's award satisfies this court's circumscribed standard of review, the "essence test." Therefore, we reverse the decision of the Commonwealth Court and reinstate the arbitrator's award.

On May 13, 1992, Judith Walter, a teacher who served the Danville Area School District ("School District") for twenty-four years, notified the School District of her plan to retire, effective at the termination of the 1991–92 school year. Mrs. Walter's decision to retire was evidently motivated by the General Assembly's 1992 retirement incentive legislation which amended section 8302 of the Public School Employees' Retirement Code ("Retirement Code"). 24 P.S. § 8302(b.2). This piece of legislation was colloquially termed the "Mellow Bill." Specifically, the Mellow Bill was to inspire employees to retire by bestowing upon them an extra ten per cent of their credited service.

Upon her retirement in June 1992, Mrs. Walter discovered that the Mellow Bill's reach only encompassed those employees who retired after July 1, 1992. Thus, it became apparent that Mrs. Walter was ineligible for the extra service time legislatively credited by the Mellow Bill.

Although not qualified to receive the enhanced service time pursuant to the Mellow Bill, Mrs. Walter did apply for, and received from the School District, available retirement benefits based on her years of service pursuant to a collective bargaining agreement between the School District and Appellant Danville Area Education Association ("Education Association").

While entitled to some benefits under the collective bargaining agreement, Mrs. Walter was not deemed to be eligible for the additional retirement benefits available pursuant to Article

XVIII, Section 18.01 of the agreement. This section provided those retirees with at least thirty "years of service in public education" with additional benefits which consisted of a lump sum payment and payment for continuation of hospitalization and medical services for an extended period of time. As Mrs. Walter's years of service were tabulated to be only 28.9 years of service, she could not enjoy the enhanced benefits offered in section 18.01.

Thereafter, on July 8, 1994, the Public School Employees' Retirement System ("PSERS") informed Mrs. Walter of subsequent legislation known as "Son of Mellow," which amended the Mellow legislation and retroactively extended the retirement incentives contained in the Mellow Bill to former employees who had retired between May 15, 1992 and July 1, 1992. Based upon this act of the legislature, at least pursuant to the Retirement Code, Mrs. Walter was credited with over 30 years of service by PSERS, retroactive to her time of retirement.

Based upon this new information, Mrs. Walter contacted the Superintendent of the School District and requested an adjustment to her retirement benefits under the collective bargaining agreement. According to Mrs. Walter, the School District had used the PSERS' calculation of "years of service" rather than actual service time to compute eligibility for retirement benefits under section 18.01 of the agreement. Therefore, she was entitled to the section 18.01 benefits. This request was denied. As a result, Mrs. Walter filed a grievance under the collective bargaining agreement regarding her entitlement to the enhanced retirement benefits.

Pursuant to the collective bargaining agreement, the grievance was resolved through a three-step process that culminated in final and binding arbitration. Ultimately, a hearing was held before Arbitrator Scott E. Buchheit. At the center of the dispute between the parties was the meaning of the phrase "years of service in public education" found in Article XVIII, Section 18.01. The School District argued, *inter alia,* that this phrase meant actual years of service, i.e., time actually worked. Since Mrs. Walter had not actually worked thirty

years for the School District, she was not entitled to the additional retirement benefits found in section 18.01. Conversely, the Education Association, on behalf of Mrs. Walter, contended that the phrase "years of service" has included time beyond that actually spent in teaching and has included military service and maternity leave. Moreover, section 18.01 had always been interpreted to mean that the years of service would be the same as those years credited to an individual by the PSERS and that other teachers had received the retirement benefits under section 18.01 when the PSERS credited the individual with additional years of service.

Arbitrator Buchheit, after considering the differing interpretations, found the phrase to be ambiguous and looked to the past practice of the parties to discern their intent as to the meaning of the provision. After finding that two other teachers had been credited for years of work outside of actual teaching time, including one teacher who had service time credited under the original Mellow legislation, Arbitrator Buchheit concluded that Mrs. Walter should be entitled to additional retirement benefits offered under Article XVIII of the collective bargaining agreement.

The School District appealed to the Court of Common Pleas of Montour County. The trial court upheld the arbitrator's award. The School District then appealed this decision to the Commonwealth Court.

A three-member panel of the Commonwealth Court, with one member noting his dissent, reversed the order of the Court of Common Pleas and vacated the arbitrator's award. The primary reason for reversing the arbitrator's award was the Commonwealth Court's determination that use of the Son of Mellow amendments to calculate entitlement to the retirement benefits provided for in section 18.01 of the collective bargaining agreement violated the Pennsylvania Constitution's, and the United States Constitution's, prohibition against the impairment of contracts through retroactive legislation. According to the Commonwealth Court, the award constituted an unconstitutional impairment of contract because laws that are in effect at the time the parties entered into the

contractual relationship are merged with the rights and obligations of the parties as set forth in the agreement and cannot legally impair the contract.

The Commonwealth Court also suggested that because the collective bargaining agreement did not expressly incorporate the Retirement Code into the collective bargaining agreement, the parties could not have intended to be bound by subsequent changes implemented by the PSERS pursuant to the Mellow amendments. The court deemed the arbitrator's reference to the Retirement Code to be a unilateral modification of the collective bargaining agreement. Thus, the Commonwealth Court reversed the order of the trial court and vacated the arbitrator's award. We granted the Education Association's petition for allowance of appeal.

The proper role of an appellate court in reviewing an arbitrator's interpretation of the terms of a collective bargaining agreement is one of deference. In *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977), we first adopted the "essence test" as the appropriate standard of review of labor arbitration awards under the Pennsylvania Public Employee Relations Act (Act 195). 43 P.S. § 1101.101 *et seq.* Although the lower tribunals did not have the benefit of our recent decision in *State System of Higher Education v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999), in that case we reaffirmed the essence test as the appropriate standard of review and clarified its requirements. Under this standard, an appellate court will first determine if the issue, as properly defined, is encompassed within the terms of the collective bargaining agreement. If so, the court will uphold the arbitrator's award if the arbitrator's interpretation may be rationally derived from the collective bargaining agreement. We made clear that the court does not inquire into whether the arbitrator's decision is reasonable or even manifestly unreasonable; rather, the question is whether the award may in any way be rationally derived from the agreement between

the parties. *State System of Higher Education,* 743 A.2d at 413.

The rationale behind this limited review is that final and binding arbitration is a highly favored form of dispute resolution and extremely important in the context of labor relations. Unlike more traditional judicial resolution of disputes, arbitration offers speed, low expense, and informality. Moreover, it has been pointed to as a prime factor in assuaging industrial strife. *Id.* These benefits would be eroded if courts were to assume a greater role in reviewing labor arbitration awards. Thus, it is through this circumscribed standard that we must view the Commonwealth Court's opinion and the arbitrator's award.

However, before we address the Commonwealth Court's constitutional analysis, we must consider a threshold issue. The Education Association argues that the Commonwealth Court improperly raised the issue of an unconstitutional impairment of contract *sua sponte.* We agree.

Our court has made clear that an appellate court will not reverse a judgment on a basis that was not raised and preserved by the parties. *Department of Transportation v. Boros,* 533 Pa. 214, 620 A.2d 1139, 1142–43 (1993); *Kimmel v. Somerset County Commissioners,* 460 Pa. 381, 333 A.2d 777, 779 (1975); *Francis v. Neville Township,* 372 Pa. 77, 92 A.2d 892, 894 (1952); *Fisher v. Brick,* 358 Pa. 260, 56 A.2d 213, 215 (1948). As most clearly and unambiguously stated by Madame Justice Newman writing for the court, "We have held on numerous occasions that where the parties fail to preserve an issue for appeal, the Superior Court may not address the issue, even if the disposition of the trial court was fundamentally wrong." *Knarr v. Erie Insurance Exchange,* 555 Pa. 211, 723 A.2d 664, 666 (1999). The Commonwealth Court itself has previously applied this principle in the labor arbitration setting. *West Shore Education Assoc. v. West Shore School District,* 72 Pa.Cmwlth. 374, 456 A.2d 715 (1983)(failure of school district to raise arbitrability before the arbitrator constitutes waiver of the issue).

■ This jurisprudential tenet that a court will consider only the controversies preserved by the litigants even applies to allegations of constitutional error. Our decision in *Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975) is directly on point. In a unanimous decision, our court held that the Superior Court, by *sua sponte* deciding the constitutionality of the Divorce Law, when the constitutionality of the provisions in question was never questioned by the parties either in the trial court or in their briefs to the Superior Court, exceeded its proper appellate function of deciding controversies presented to it. The policy reasons expressed by our court twenty-five years ago behind prohibiting the *sua sponte* raising of issues by an appellate court to reverse a judgment are as valid today as then. *Sua sponte* consideration of issues disturbs the process of orderly judicial decision making. A reviewing court addressing an issue on its own deprives counsel of the opportunity to brief and argue the issues and the court the benefit of counsel's advocacy. *Id.* It renders the lower proceedings a mere dress rehearsal for further appellate review.

■ Here, the School District failed to raise the issue of the constitutionality of the application of the Retirement Code in calculating retirement benefits under the collective bargaining agreement in the proceedings before the arbitrator. The issue was not raised before the Court of Common Pleas on appeal. Moreover, the School District's brief submitted to the Commonwealth Court is devoid of any discussion of the constitutionality of the award.[1] In sum, because this issue was never presented to any lower tribunal for consideration, the Commonwealth Court did not have the power to raise the constitutionality of the award. Therefore, regardless of the accuracy of the Commonwealth Court's legal analysis with respect to the constitutional principle of impairment of con-

---

1. In its brief, the School District, in passing, noted that the parties could not have meant to incorporate future legislative enactments into the collective bargaining agreement. However, this is clearly a contract interpretation argument regarding the intent of the parties and not a constitutional attack on the Education Association's interpretation of the agreement.

tract, we are compelled to reject this basis utilized by the Commonwealth Court to vacate the arbitrator's award.

While we will not consider the constitutionality of the arbitrator's award, the Commonwealth Court also determined that the arbitrator's award was violative of the essence test because the Retirement Code was not expressly incorporated into the collective bargaining agreement. According to the Commonwealth Court, to look to the Retirement Code in resolving the dispute would be to improperly unilaterally alter the agreement of the parties. Although not addressed by the Commonwealth Court, as noted above, the arbitrator in this case found the terms of the contract to be ambiguous. Although the Retirement Code was not expressly incorporated into the agreement, the arbitrator looked to the conduct of the parties, i.e., past practice, to aid in discerning the intent of the parties as to the meaning of the contract provision.

■ We believe that the Commonwealth Court erred in its analysis. Our first inquiry under the essence test is whether the issue of Mrs. Walter's entitlement to retirement benefits is within the terms of the collective bargaining agreement. Clearly Article XVIII encompasses the issue of entitlement to retirement benefits. The issue then becomes whether the arbitrator's interpretation can in any rational way be derived from the agreement. As to this question, when discerning the intent of the parties, the arbitrator is not confined to the express terms of the collective bargaining agreement. Our court has stated that an arbitrator's award may draw its essence from the collective bargaining agreement if the arbitrator's "interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *State System of Higher Education,* 743 A.2d at 411, *citing, Community College of Beaver County,* 375 A.2d at 1275 (citations omitted).[2]

---

**2.** More specifically with regard to past practice, as stated in Frank and Edna Asper Elkouri's seminal work on arbitration, *How Arbitration Works,*

■ Thus, where there is ambiguity, an arbitrator may attempt to discern the intent of the parties, and thus, resolve a dispute over contract interpretation, by considering the actions of the parties as evidence of their interpretation of the terms of a collective bargaining agreement.

In the case sub judice, the arbitrator was asked to interpret Article XVIII, Section 18.01 of the collective bargaining agreement to determine the proper calculation of Mrs. Walter's retirement benefits. This section uses "years of service in public education" to arrive at a determination of eligibility for enhanced benefits. This phrase was not defined in the agreement and the arbitrator found it to be ambiguous. Thus, he attempted to discern the parties' intent as to the meaning of this phrase. While the arbitrator recognized that the collective bargaining agreement did not make explicit reference to the Retirement Code, he found that the School District had *in fact* used the Retirement Code in the past to give meaning to this contractual phrase.

Specifically, one teacher in particular, Joanne Aurand, retired in 1993 with 28 years of service. As her retirement fell within the time period of the original Mellow Bill, she received credit for additional years of service which elevated her PSERS credit to over 30 years of service. As a result, the School District granted her 30 years of service in public education pursuant to Article XVIII of the collective bargaining agreement. A similar situation occurred with respect to Donald Straub, a teacher who, because he was credited with two years of military service for purposes of pension under the PSERS, was granted increased Article XVIII retirement benefits under the collective bargaining agreement.

> Unquestionably custom and past practice constitute one of the most significant factors in labor-management arbitration. Evidence of custom and past practice may be introduced for any of the following major purposes: (1) to provide the basis for rules governing matters not included in the written contract; (2) to indicate the proper interpretation of ambiguous contract language; or (3) to support allegations that clear language of a written contract has been amended by mutual action or agreement.

Elkourki and Elkouri, *How Arbitration Works* 437 (4 th ed.1988).

It becomes apparent that the arbitrator's interpretation of the collective bargaining agreement was not a unilateral alteration of the agreement, but an attempt to discover the intention of the parties. This intent was derived from the agreement, viewed in light of the School District's past practice with respect to other similarly-situated employees. The arbitration award simply required the School District to treat Mrs. Walter the same as other bargaining unit members with regard to calculation of retirement benefits.

The School District argues that these past actions were not typical or authorized by the School Board, and thus, they should not have been considered as past practice. These arguments, while forceful before an arbitrator, are largely lost before a reviewing court applying the essence test. The School District fails to recognize that it is not an appropriate role for an appellate court to immerse itself into the fray and to reassess the judgment of the arbitrator. True to the deferential essence test, we will merely see if the interpretation can in any way be rationally derived from the agreement. That is, we will see if the arbitrator applied the terms of the agreement and discerned the intent of the parties viewed in light of the language, its context and other indicia of the parties' intent. The arbitrator considered the School District's argument regarding past practice and rejected it, finding that the School District's prior actions dictated that Mrs. Walter be treated in the same manner. Moreover, the arbitrator noted that no evidence was offered as to a counter situation in which a teacher was denied Article XVIII benefits because the School District refused to recognize years of service credited to an individual by the PSERS. Finally, the arbitrator found that the Superintendent of the School District, the Board's primary agent, authorized these increased retirement benefits. This is more than sufficient for our review. Thus, the arbitrator's award satisfies the essence test.

Contrary to the School District's suggestion, we do not believe that our decision in *Juniata–Mifflin Counties Area Vocational–Technical School v. Corbin,* 547 Pa. 495, 691 A.2d

924 (1997), compels a different result. In that case our court upheld an arbitrator's award that arose from a grievance that was based upon the job security provisions of the Public School Code. In a savings clause, the collective bargaining agreement made reference to rights under the School Code and Act 195, but it did not expressly reference the School Code's job security provisions. Our court determined that although the intention of the parties to incorporate the job security provisions was not clearly set forth in the agreement, and the parties had not expressly set forth reference to the job security provisions, the language employed was sufficient for the arbitrator to conclude that these provisions of the School Code were incorporated into the agreement. Based upon *Juniata–Mifflin*, the School District asserts that the Retirement Code must be expressly incorporated into the agreement to be given effect.

*Juniata–Mifflin* is obviously distinguishable from the case *sub judice*. First, the grievance in *Juniata–Mifflin* was based solely upon the job security provisions found in the School Code. Thus, it was absolutely critical for the School Code to be expressly incorporated into the agreement for the grievance to be resolved by the arbitrator. Unlike the grievance in *Juniata–Mifflin*, in this case, the grievance was premised upon a provision in the collective bargaining agreement, viz., section 18.01. Moreover, it is of no moment that the collective bargaining agreement in this case does not expressly state that the parties intended that the Retirement Code govern calculation of retirement benefits pursuant to section 18.01. This is because the arbitrator found in considering the School District's past practice that the District had *in fact* relied upon the Retirement Code to calculate benefits under section 18.01. As noted above, reliance upon past practice in the face of an ambiguous contract provision is not only permissible, but is an important tool through which an arbitrator may discover the intent of the parties. Thus, *Juniata–Mifflin* does not alter the result reached today.

We note that the School District is not without recourse. One reason an appellate court may give such deference to an

arbitrator's award is that if an arbitrator's interpretation is contrary to one party's understanding of the agreement, at the expiration of the collective bargaining agreement, the negotiating table will assume center stage and the agreement can be renegotiated to reflect the "true" intention of the party. The give and take of the bargaining process allows quite easily for a reviewing court to undertake a limited review, as an arbitrator's interpretation of a collective bargaining agreement may easily be erased by a future renegotiated contract between the parties.

Therefore, we find that the Commonwealth Court erred in its review of the arbitrator's award. The award satisfies the essence test. Thus, we reverse the decision of the Commonwealth Court.

However, having upheld the substance of the arbitrator's award, we are left to consider three remaining issues. On appeal to the Commonwealth Court, the School District raised additional reasons why the arbitrator's award should be vacated. First, the School District argued that Mrs. Walter had no standing on the basis that she was not an employee in the bargaining unit. Second, the School District contended that Mrs. Walter's grievance was untimely. Finally, the School District submitted that the arbitrator's award was manifestly unreasonable. As the Commonwealth Court found the arbitrator's award to be violative of, *inter alia*, constitutional dictates, it did not address these issues. Rather than remand the case to the Commonwealth Court for further consideration, for purposes of judicial economy, we will address these outstanding issues now.

■■■ The arbitrator opined that Mrs. Walter did have standing to grieve the determination of her retirement benefits. He indicated that the agreement did not limit the grievance process to "employees" but permitted "persons" to initiate a grievance. Article VIII. Furthermore, the agreement specifically addressed retirement benefits and made reference to "retirees" in Article XVIII(c) of the agreement. Thus, the arbitrator concluded that Mrs. Walter had standing

to file a grievance. Applying the essence test, the arbitrator addressed an issue within the terms of the agreement and resolved the issue by applying the terms of the agreement. Clearly, the arbitrator's determination was rationally derived from the agreement.

Furthermore, according to the School District, the grievance was untimely. The arbitrator found that the grievance was not time-barred. Specifically, the arbitrator determined that Mrs. Walter did not receive formal notification from the School Board that the Article XVIII benefits that she sought were being denied until the letter to her dated July 15, 1994. Thereafter, the instant grievance was filed on July 25, 1994. The collective bargaining agreement required at step one that a grievance be filed "within seven (7) working days after its occurrence." The arbitrator found that because there were four weekend "non-working" days between July 15 and July 25, it was apparent that the grievance was filed within the seven working day requirement. Again, the arbitrator addressed an issue covered by the agreement. He considered terms of the collective bargaining agreement, applied the facts of the case to these terms, and rendered his conclusion. Thus, applying the essence test, we are compelled to uphold the arbitrator's determination.

Finally, the School District contended that the award was "manifestly unreasonable." As noted above, neither the School District nor the Commonwealth Court had the benefit of our recent decision in *State System of Higher Education.* In *State System of Higher Education*, we found that reviewing the reasonableness of an arbitrator's award encourages a court to intrude into the domain of the arbitrator and to substitute its interpretation of the collective bargaining agreement for that of the arbitrators. Thus, consistent with the essence test and its deferential standard of review, a reviewing court will not consider whether an arbitrator's award was "manifestly unreasonable." *State System of Higher Education*, 743 A.2d at 413; *Pennsylvania Game Commission v. Civil Service Commission (Toth)*, 561 Pa. 19, 747 A.2d 887,

891, n. 7, 2000 Pa. Lexis 738, n. 7 (2000)(essence test does not permit an appellate court to determine whether an award is "manifestly unreasonable"). That being the case, we find that the School District's assertion is no longer recognized as a valid basis to vacate an arbitrator's award, and thus, the School District is not entitled to relief on this ground.

Having resolved all issues, we reverse the decision of the Commonwealth Court and reinstate the arbitrator's award.

Justice CASTILLE files a concurring opinion.

Justice ZAPPALA concurs in the result.

CASTILLE, Justice, concurring.

I join the majority opinion so far as it states that the "essence test" is the appropriate standard of review of labor arbitration awards. I write separately for the same reasons expressed in my concurring and dissenting opinion in *State Sys. of Higher. Educ. v. State College Univ. Prof'l Ass'n (PSEA/NEA)*, 560 Pa. 135, 743 A.2d 405 (1999) (Castille, J., concurring and dissenting). It is still my view that the essence test should include a review to determine whether the arbitrator's decision is manifestly unreasonable. Such a standard protects against unbridled discretion by the arbitrator. When parties agree to arbitrate disputes, surely they do not contemplate a circumstance where unreviewable, manifestly unreasonable decisions will result. This approach allows for limited judicial review where the arbitrator's decision involves an issue that is arguably covered by the terms of the collective bargaining agreement, yet it is apparent that the decision was manifestly unreasonable.

Having said this, I nonetheless join the majority opinion as I recognize the *stare decisis* effect of *State System*. I would still add that, in my view, the arbitrator's award here was not manifestly unreasonable for the reasons stated in the majority opinion. Under any test, the award here must be reinstated.