**[J-35A-2022 and J-35B-2022]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| GIBRALTAR ROCK, INC. | : | No. 78 MAP 2021 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Commonwealth Court dated June 30, |
| | : | 2021 at No. 500 C.D. 2020 Reversing |
| | : | the Order of the Pennsylvania |
| PENNSYLVANIA DEPARTMENT OF | : | Environmental Hearing Board dated |
| ENVIRONMENTAL PROTECTION | : | April 24, 2020 at EHB Docket No. |
| | : | 2018-072-L.  (Consolidated with |
| | : | 2018-075-L) and Remanding |
| APPEAL OF:  NEW HANOVER TOWNSHIP | : | |
| AND PARADISE WATCHDOGS/BAN THE | : | ARGUED:  May 18, 2022 |
| QUARRY AND JOHN C. AUMAN | : | |
| | | |
| GIBRALTAR ROCK, INC., | : | No. 79 MAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court dated June 30, |
| | : | 2021 at No. 500 C.D. 2020 Reversing |
| v. | : | the Order of the Pennsylvania |
| | : | Environmental Hearing Board dated |
| | : | April 24, 2020 at EHB Docket No. |
| PENNSYLVANIA DEPARTMENT OF | : | 2018-072-L.  (Consolidated with |
| ENVIRONMENTAL PROTECTION, | : | 2018-075-L) and Remanding |
| | : | |
| Appellant | : | ARGUED:  May 18, 2022 |
| | : | |

**OPINION**

**JUSTICE DONOHUE**                                        **DECIDED:  December 21, 2022**

This matter involves permits issued by the Department of Environmental

Protection (the Department) to Gibraltar Rock, Inc., a Pennsylvania corporation seeking

to operate a quarry on a 241-acre property in New Hanover Township (the Township).

The Environmental Hearing Board (Board) sustained an appeal of the issuance of the permits, brought by the Township and citizens' groups. The Board rescinded the permits finding that their issuance was inconsistent with statutory and regulatory requirements. The Commonwealth Court reversed the Board's decision for reasons that were never raised by the parties, including that the Board's opinion effectuated an unconstitutional taking. Based on our review, we find that the Commonwealth Court erred in considering issues not raised by Gibraltar and then by reversing the Board's rescission of the permits. We therefore vacate the order of the Commonwealth Court and remand for the Commonwealth Court to consider the issue raised in Gibraltar's petition for review.

**Factual Background**

For the past twenty years, Gibraltar worked to obtain and renew permits for quarrying on land located on a 241-acre property in the Township. The permits include a non-coal surface mining permit, a national pollutant discharge elimination system permit (NPDES), and an authorization to mine (collectively, the permits). The permits were originally issued to Gibraltar in 2005, then renewed in 2010 and 2018.[1] During protracted litigation regarding the permits and zoning,[2] it came to light that a site directly

---

[1] The permits were issued by the Department's Pottsville district mining office. *See* Noncoal Surface Mining Permit No. 46030301, 4/15/2005, 4/15/2010 (renewed) & 7/2/2018 (renewed); NPDES Permit No. PA0224308, 4/15/2005, 4/15/2010 (renewed) & 7/2/2018 (renewed); Noncoal Authorization to Mine No. 6794-46030301-02, 7/2/2018.

[2] On April 15, 2005, the Department first issued the permits, authorizing noncoal surface mining activities on the 241 acres. *New Hanover Twp., Paradise Watchdogs/Ban the Quarry, & John C. Auman v. DEP & Gibraltar Rock, Inc.*, 2020 EHB 124, 128 (¶ 13) (Apr. 24, 2020) (citing Stipulation of Facts, 10/17/2019, ¶ 13). Notably, prior to applying for the permits, Gibraltar filed applications for relief from zoning ordinances that would prohibit operation of the quarry. *New Hanover Twp.*, 2020 EHB at 127 (¶¶ 8-10). The (continued…)

adjacent to the quarry had contributed to groundwater pollution in the area. In 2011, the

(…continued)

Township Zoning Hearing Board reviewed the permits and rejected some arguments but granted Gibraltar a special exception for quarrying on its land with added conditions, some of which were affirmed (e.g., a requirement that Gibraltar construct a berm before quarrying) while others were struck down (a requirement that Gibraltar dedicate eighty acres of its land to the Township for recreation purposes or pay over two million dollars as a "fee in lieu of land") on appeal. *In re Gibraltar Rock*, 2287 C.D. 2011, 2013 WL 5614244, *9-12 (Pa. Commw. Oct. 11, 2013) (non-precedential decision). This application and appeal process lasted nearly a decade, a lag which necessitated additional steps for the permitting process.

For instance, although a surface mining permit is valid for the life of the quarry and its reclamation, it must be activated within three years of issuance. 25 Pa. Code § 77.128. Because litigation was pending regarding the substantive validity of the ordinances and districts in which Gibraltar would be permitted to mine, and because Gibraltar's surface mining permit was otherwise required to be activated by April 15, 2008, Gibraltar sought and obtained several extensions from the Department to activate the permit. *New Hanover Twp.*, 2020 EHB at 129, ¶ 18 (citing 25 Pa. Code § 77.128(b)).

Also, in 2009, Gibraltar began to activate Permit No. 46030301 by beginning construction. *Id*. at 129, ¶ 19. The Township obtained a preliminary injunction to stop construction at the site until Gibraltar secured all zoning approvals. Because Gibraltar had already begun construction, it sought and the Department approved a series of temporary cessations of operations under the mining permits. *Id*. (citing 25 Pa. Code § 77.651(b) (requiring written application to the Department prior to "temporary cessation of operations")). The Township filed appeals to the Board which were partly sustained. The Board concluded that Gibraltar may submit a mining permit renewal application if it wanted to maintain the permit while it pursued the necessary local approvals to ensure that the 2005 permit was still up-to-date from a noncoal surface mining regulatory perspective. *Id*. at 129-30, ¶¶ 20-22 (citing *New Hanover Twp. v. DEP & Gibraltar Rock, Inc.*, 2014 EHB 834, 888-89 (Nov. 3, 2014)). The Board directed the Department to notify Gibraltar of the format and contents required for the renewal application. *Id*.

Gibraltar filed an application for renewal of its NPDES Permit No. PA0224308 on October 11, 2014. *Id*. at 130, ¶ 23. Thereafter, the Department issued instructions to Gibraltar regarding the renewal application for its surface mining permit. On January 16, 2015, Gibraltar submitted a renewal application for its surface mining permit. *Id*. at 130-31, ¶ 25. After Gibraltar submitted its renewal application, the Department issued deficiency letters requesting additional information. Among other things, the Department sought information pertaining to groundwater contamination at the proposed quarry site. *Id*. at 131-32, ¶¶ 27-34; *id*. at 140, ¶ 80. Gibraltar responded to all of the requests and inquiries.

Department discovered that a former industrial site, the Hoffmansville Road and vinyl chloride site (Hoff VC site) was contaminated with hazardous substances that seeped into the groundwater. *New Hanover Twp., Paradise Watchdogs/Ban the Quarry, & John C. Auman v. DEP & Gibraltar Rock, Inc.*, 2020 EHB 124, 125 (Apr. 24, 2020). Thus, the Hoff VC site was officially designated as a cleanup site under the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), Act of October 18, 1988, P.L. 756, 35 P.S. §§ 6020.101–6020.1305. *New Hanover Twp.*, 2020 EHB at 125.

Notably, the Township and citizens' groups Paradise Watchdogs and Ban the Quarry, as well as John C. Auman (collectively, the Township) have opposed the construction of the quarry throughout the past twenty years. They have cited various concerns, chief among which is that quarrying will spread already-existing contamination from the Hoff VC site.

During the permit renewal process in 2017, a draft NPDES permit was published in the Pennsylvania Bulletin. *New Hanover Twp.*, 2020 EHB at 141, ¶ 86. In response, the Township sent the Department a letter with written objections and comments, seeking that Gibraltar provide a "fate and transport model considering 3-dimensional groundwater flow." *Id*. at 142, ¶ 88. "A fate and transport model is used to evaluate hydrogeologic contaminant movement from a source, predicting estimated contaminant concentration, direction, and arrival time to a selected destination while accounting for parameters such as contaminant degradation and aquifer porosity." *Id*. at 157, ¶ 184. The Department forwarded the request to Gibraltar, which, through its technical consultant EarthRes Group, Inc. (EarthRes), presented a fate and transport model to the Department's Pottsville district mining office which was reviewing the permit. *Id*. at

142, ¶ 89. Gibraltar's model concluded that contaminant capture due to quarry pumping was unlikely. *Id*. Gibraltar also responded to the Township's comments and objections, provided additional information in response to the Pottsville mining office's requests, and submitted a reclamation bond in the amount of $1,422,935.00. *Id.* at 143, ¶¶ 93-97. On July 2, 2018, the Department's Pottsville district mining office issued the final renewed permits. *Id*. at 143, ¶ 98.[3]

The Township appealed to the Board, which held a week of hearings regarding the permit renewals. The Board determined that the Department improperly issued the permits because Gibraltar failed to affirmatively demonstrate, inter alia, that the operation of its quarry complied with the Noncoal Surface Mining Conversion and Reclamation Act (Noncoal Act)[4] requirement that it "will not cause pollution to the waters of the Commonwealth." 52 P.S. § 3308(a)(3). Relying on expert testimony presented by the Township, the Board cited the risk that quarrying activities would likely intercept and spread contamination plumes emanating from the Hoff VC site, leading to groundwater contamination. *New Hanover Twp.*, 2020 EHB at 203, ¶¶ 8-10. The Board entered an order rescinding the permits. Board Order, 4/24/2020.

In serving its function as factfinder and arbiter of credibility, the Board made extensive factual findings. It found that more than a dozen contaminants – some of which can persist for more than 100 years absent remediation – continue to be present at the Hoff VC site at levels that exceed the medium-specific concentration established

---

[3] Gibraltar's final land development plan remained pending. *New Hanover Twp.,* 2020 EHB at 143, ¶ 99.

[4] Act of December 19, 1984, P.L. 1093, *as amended* 52 P.S. §§ 3301–3326.

for used residential aquifers.[5]  *New Hanover Twp*., 2020 EHB at 145-47, ¶¶ 113-14, 122.  It found that recent samplings from monitoring wells at the Hoff VC site in 2017 and 2019 uncovered the presence of previously undetected chemical contaminants.  *Id*. at 147, ¶ 125.  The Board also found that the Department was not at that time "taking any action" with respect to the contamination of the monitoring wells and that the Department had "no immediate or specific plans at this time to conduct further studies and remediation activities at the Hoff VC HSCA Site, although there is no doubt that there will be such activities."  *Id*. at 149-50, ¶¶ 133-36.

The Board found that the Township's expert geologist Toby Kessler credibly testified to a reasonable degree of scientific certainty that the contamination being detected at Gibraltar's monitoring wells originated at the Hoff VC site and was already moving from the Hoff VC site toward the quarry, even without any pumping.  *Id*. at 153, 156, ¶¶ 157, 177.  It also credited the testimony of Dr. Charles McLane, another expert retained by the Township, demonstrating that quarry pumping would increase contaminated groundwater flow from the area of the Hoff VC site toward the area of the quarry pits.  *Id*. at 162, ¶ 216.[6]

---

[5] The Land Recycling and Environmental Remediation Standards Act, Act of May 19, 1995, P.L. 4, *as amended* 35 P.S. § 6026.101–908, defines "Medium-specific concentration" as "The concentration associated with a specified environmental medium for potential risk exposures." 35 P.S. § 6026.103.  Section 303 describes the requirements used to establish the medium-specific concentration of regulated substances in groundwater in aquifers for drinking water or agriculture, as well as in other settings.  *Id*. § 6026.303.

[6] The Board observed that the Department had not conducted an analysis of how quarry pumping would impact the remediation efforts at the Hoff VC site.  *New Hanover Twp.,* 2020 EHB at 164, ¶ 229.  Nor did the Department call any expert witnesses on this (or any other issues) in this appeal.  *Id*. at 158, ¶¶ 185-88.  Instead, the Department relied upon the fate and transport model prepared by EarthRes.  *Id*.

Finally, the Board emphasized the testimony of a Department witness indicating that he would not have issued the permits knowing what he learned from the hearing. *Id*. at 166, ¶ 248. Along these lines, the Board found that the Department issued the permits on multiple mistaken assumptions, including that contamination from the Hoff VC site would likely never reach the quarry, *id*. at 155, ¶ 168, and that Gibraltar's system of "sentinel wells" would alert them to encroaching contamination from the Hoff VC site in time for Gibraltar to take preventative measures or actions. *Id*. at 163, ¶ 222. Because the sentinel wells were already contaminated, they could not provide an "early warning of the spread of contamination." *Id.* at 163, ¶ 225.[7]

Having established the facts, the Board recounted the legal standards by which it assesses third-party appeals. Those challenging the issuance of the permit bear the burden of proof and must show by a preponderance of the evidence that the Department acted contrary to the law or unreasonably or that its decision is not supported by the facts. *Id*. at 167 (citing *Solebury Sch. v. DEP*, 2014 EHB 482, 544 (July 31, 2014); 25 Pa. Code § 1021.122(c)(2)).

The approval or denial of a permit is reviewed under 52 P.S. § 3308, which provides in relevant part as follows:

**Section 8.  Permit approval or denial.**

---

[7]  The Department also mistakenly assumed that the contaminated water could and would be treated prior to its discharge to surface waters, *id*. at 164, ¶ 231, but the Board found that the permits do not obligate Gibraltar to clean up contaminated groundwater emanating from the Hoff VC site, regardless of whether quarry pumping has caused the active migration of contaminants in the groundwater. *Id*. at 164, ¶ 232 (citing Noncoal Surface Mining Permit No. 46030301C2 & C3, (Special Conditions or Requirements, ¶¶ 38-39)). Nor do the permits identify a method for treating the contaminants identified therein. *Id*. at 165, ¶ 240.

(a) **General rule.** – No permit shall be issued under this act unless the applicant affirmatively demonstrates that:

(1)    The permit application is accurate and complete and that all requirements of this act and the regulations promulgated hereunder have been complied with.

(2)    The operation and reclamation plan contained in the application can be accomplished as required by this act and regulations.

(3)    The operation will not cause pollution to the waters of this Commonwealth.

(b)    **Other grounds for refusal to issue, renew or amend permit.** –

(1)    The department shall not issue any surface mining permit or renew or amend any permit if it finds, after investigation and an opportunity for an informal hearing, that:

(i)    the applicant has failed and continues to fail to comply with any of the provisions of this act of May 31, 1945 (P.L. 1198, No. 418), known as the Surface Mining Conservation and Reclamation Act [52 P.S. §§ 1396.1–1396.19b]; or

(ii)    the applicant has shown a lack of ability or intention to comply with any provision of this act or the Surface Mining Conservation and Reclamation Act, as indicated by past or continuing violations.

Any person, partnership, association or corporation that has engaged in unlawful conduct, as defined in section 23, [52 P.S. § 3223] or that has a partner, associate, officer, parent corporation, subsidiary corporation, contractor or subcontractor that has engaged in such unlawful conduct shall be denied any permit required by this act unless the permit application demonstrates that the unlawful conduct is being corrected to the satisfaction of the department.

52 P.S. § 3308 (a)(1)-(3), (b)(1).

Further, the Board observed that the relevant regulations, which echo the statutory requirements, provide that a permit may not be approved unless the applicant affirmatively demonstrates and the Department finds in writing that, inter alia,

> (1) The permit application is accurate and complete and that the requirements of the act, the environmental acts and this chapter have been complied with.
>
> (2) The applicant has demonstrated that the noncoal mining activities can be reasonably accomplished as required by the act and this chapter under the operation and reclamation plan contained in the application.
>
> (3) The applicant has demonstrated that there is no presumptive evidence of potential pollution of the waters of this Commonwealth.

25 Pa. Code § 77.126. The regulations also require a permit applicant to show that it will "ensure the protection of the quality and quantity of surface water and groundwater[.]" 25 Pa. Code § 77.457(a). Finally, the Board stated that the Department's duty to ensure that mining "can be reasonably accomplished" under 25 Pa. Code § 77.126(2) "requires it to ensure that the mining can be performed in accordance with the law without an undue risk to health, safety, and the environment." *New Hanover Twp.*, 2020 EHB at 168-69.

Based on the extensive factual findings and applicable law, the Board concluded that the "spread of multiple hazardous contaminants in the groundwater that would result from Gibraltar's quarry pumping constitutes presumptive evidence of potential pollution that cannot be permitted consistent with the Noncoal Act. 52 P.S. § 3308(a); 25 Pa. Code § 77.126(a)(3)." *Id*. at 203, ¶ 8. Also, "Gibraltar has not shown that the quarry can be operated without disturbance to the prevailing hydrologic balance, without deleterious changes in groundwater quality, and without causing water pollution in

violation of 25 Pa.Code § 77.521 and 52 P.S. § 3308(a). *See also* 25 Pa. Code § 77.457." *Id*. at 203, ¶ 10. It found that the Department did not uphold its constitutional duties as trustee of Pennsylvania's public natural resources under Article I, Section 27[8] of the Pennsylvania Constitution because it did not "fully consider and understand the environmental effects of" issuing the permit, and it "failed to act with prudence and impartiality as the trustee of Pennsylvania's public natural resources by permitting Gibraltar's quarry." *Id*. at 204, ¶¶ 12-14. Also, the Department erred in concluding that Gibraltar's operations "could be reasonably accomplished in accordance with the law." *Id*. at 204, ¶¶ 15-17 (citing 52 P.S. § 3308(a)(2); 25 Pa. Code § 77.126(a)(2)). Namely, the permit application violated the requirement that it must be "complete" in that it "does not describe how a discharge potentially containing hazardous substances will be treated." *Id*. at 204-05 (¶¶ 18-19 (citing 52 P.S. § 3308(a)(1); 25 Pa. Code § 77.126(a)(1)).

Finally, and relevant to the only substantive challenge raised by Gibraltar on appeal, the Board addressed the remedy:

> Clearly, the Department has issued the Gibraltar permits prematurely in light of the unanswered questions regarding the Hoff VC site. As investigation and remediation of that

---

[8] **§ 27. Natural Resources and the public estate.**

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. art. I, § 27.

hazardous site evolves, it may become clear that quarrying can be accomplished in harmony with the cleanup. However, given the lack of any momentum on that site, we are concerned that a **remand** pending HSCA activities would drag on indefinitely, again giving rise to the staleness concerns that required a remand in our first Adjudication. Therefore, we will rescind the permits but without prejudice to Gibraltar's right to reapply for the permits if remediation of the Hoff VC site matures to the point that it becomes apparent that there will be no presumptive evidence of potential pollution and quarrying will not unreasonably interfere with the HSCA cleanup.

*Id*. at 201-02 (internal citations omitted).[9]

Gibraltar filed an appeal to the Commonwealth Court, pursuant to 42 Pa.C.S. § 763(a)(1),[10] asserting that the Board erred in rescinding the permits rather than remanding them to the Department. Gibraltar's Petition for Review, 5/26/2020, ¶ 13; Gibraltar's Commonwealth Court Brief, 9/4/2020, at 4. Gibraltar insisted that the Board based its remedy determination on two findings: there was a lack of momentum to clean up the Hoff VC site and the neighboring site's clean-up would drag on indefinitely, giving rise to staleness concerns, which Gibraltar identified as arising out of the Board's Finding of Fact 133.[11] Gibraltar's Commonwealth Court Brief, 9/4/2020, at 25-30, 31-

---

[9] In the Board's 2014 adjudication, it concluded that the Department abused its discretion by providing permit extensions to Gibraltar for more than nine years "without evaluating whether the permit which was issued in 2005 is still current and up-to-date from a noncoal surface mining regulatory perspective." *New Hanover Twp.*, 2014 EHB 834, 902, ¶ 18.

[10] Section 763(a)(1) provides that the Commonwealth Court "shall have exclusive jurisdiction of appeals from final orders of government agencies[.]" 42 Pa.C.S. § 763(a)(1); *see also* PA. CONST. art. V, § 9 (providing that "[t]here shall … be a right of appeal … from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law").

[11] Gibraltar refers to the Board's Finding of Fact 133 as the basis for the Board's faulty conclusion. *See New Hanover Twp.*, 2020 EHB at 149, ¶ 133 (finding that the (continued…)

35. Gibraltar stated that neither finding was supported by substantial evidence; therefore, it urged the Commonwealth Court to reverse the decision to rescind rather than remand the permit approvals. *Id*. at 29-30. Gibraltar also raised two additional arguments. First, the Commonwealth Court should consider the Township's "bad faith" in withholding an expert report (that of Dr. McLane) identifying significant concerns regarding the issuance of the permit up until the hearing before the Board. *Id*. at 35-40. Second, Gibraltar urged the court to consider the enormous expense and time it had sunk into the permitting process, complaining that forcing it to start all over would be "manifestly unjust." *Id*. at 41.

On Gibraltar's appeal, the Commonwealth Court reversed the Board's order and remanded the matter with instructions to the Department to direct Gibraltar on what it must do to obtain mining permits. *Gibraltar Rock, Inc. v. DEP*, 258 A.3d 572, 581-82 (Pa. Commw. 2021). The court faulted the Board for basing its decision on the Department's conduct at the Hoff VC site rather than on the substance of Gibraltar's renewal application. *Gibraltar Rock,* 258 A.3d at 581-84. In support, the court relied on Section 24 of the Noncoal Act which it interpreted as "authoriz[ing] the repeal of mining permits[,]" only where the repeal relates to the terms of the Act and its regulations. *Id*. at 581-82. It faulted the Board for rescinding the permits on the basis of the Department's action, or inaction, under another statute (presumably the HSCA) and relating to another property.

---

(…continued)
Department "has no immediate or specific plans at this time to conduct further studies and remediation activities at the Hoff VC HSCA site, although there is no doubt that there will be such activities").

Next, the court found that based on the Board's adjudication, Gibraltar "cannot pursue the lawful use of its land for the operation of a rock quarry" unless and until the Department remediates the Hoff VC site. *Id*. at 582. By so conditioning the permit, the Board effected a taking of Gibraltar Rock's lawful use of its land without due process of law. *Id*. at 583 (citing *PBS Coals, Inc. v. Dep't of Transp.*, 244 A.3d 396, 398 (Pa. 2021) (providing that a de facto taking applies to "any governmental action that interferes with property rights")).

Further, and again sua sponte, the court addressed how the Board's adjudication was not in harmony with Article I, Section 27 of the Pennsylvania Constitution. It explained that Gibraltar's permit established an agreement to remediate groundwater pollution of the Hoff VC site to the extent that the contaminants migrate to Gibraltar's land. However, without a permit, Gibraltar could not be called upon to participate in the remediation efforts. The court stated that "[l]osing Gibraltar's participation in the cleanup of contaminated groundwater itself may work a harm on the environment," thus violating Article I, Section 27. *Id*. at 584. Therefore, the court reversed the Board's order rescinding Gibraltar's mining permits and remanded the matter to the Board with instructions to return the matter to the Department "to direct Gibraltar Rock, Inc. on what it must do to obtain mining permits pursuant to the [Noncoal Act], … and its regulations as provided in [its] opinion." *Id*.

**Analysis**

The Department[12] and the Township (collectively Appellants) sought this Court's review, asserting that the Commonwealth Court exceeded its authority by sua sponte addressing issues not raised by Gibraltar in its petition for review and that the Commonwealth Court erred in reversing the Board's order. Appellants also contest the constitutionality of the permit. This Court granted review to address multiple issues raised in the petitions for allowance of appeal.[13] Based on our review, we conclude that

---

[12] In its brief to the Commonwealth Court, the Department stated that it accepted the Board's adverse determination and therefore did not seek review. Department's Commonwealth Court Brief, 10/5/2020, at 13. The Department wrote solely to contest Gibraltar's characterization of the Commonwealth Court's scope and standard of review.

[13] The order granting the appeal listed the following questions:

> 1. Whether the Commonwealth Court's decision conflicts with prior Supreme Court decisions that a permit cannot be issued unless it meets the criteria set forth in the applicable statutes?
>
> 2. Whether the Commonwealth Court erred in remanding the permits, when the permit applicant could not prove the requirements set forth by the governing statutes for permit issuance in the first place?
>
> 3. Whether the permit in this case violates the Pennsylvania Constitution Article 1 section 27?
>
> 4. Did the Commonwealth Court exceed its authority in addressing legal questions Sua Sponte in an appeal that raised the narrow issue of whether the EHB's remedy was supported by substantial evidence?
>
> 5. Did the Commonwealth Court err in concluding that the environmental hearing board's rescission of a permit rather than remand to DEP constituted a De Facto taking?

(continued…)

the Commonwealth Court erred in considering issues not raised by Gibraltar and then by reversing the Board's rescission of the permits. We therefore vacate the order of the Commonwealth Court and remand for consideration of the issue actually presented in Gibraltar's petition for review.

Our starting point for this analysis is the Board's uncontested determination that Gibraltar failed to satisfy the permitting requirements established in the Noncoal Act and the associated regulations, *e.g.*, 52 P.S. § 3308(a); 25 Pa. Code §§ 77.126(a), 77.521. The statute is clear that "no permit shall be issued" unless the applicant affirmatively demonstrates that it meets the statutory requirements. 52 P.S. § 3308(a). The Board determined that this permit should not have been issued because Gibraltar failed to meet its burden of satisfying the criteria in the applicable statutes. As to the Board's conclusion that the permits were issued in error because Gibraltar did not show that the quarry could be operated without spreading multiple hazardous contaminants in the groundwater and without deleterious changes in groundwater quality, *New Hanover Twp.*, 2020 EHB at 203, ¶¶ 8, 10, neither Gibraltar nor the Department appealed. They

---

(…continued)

      6. Did the Commonwealth Court contradict Supreme Court decisions regarding the department's duties under Article I, Section 27 of the Pennsylvania Constitution?

      7. Did the Commonwealth Court err in interpreting the noncoal surface mining act to preclude permit rescission where the environmental hearing board concluded renewal requirements were not met?

      8. Did Commonwealth Court err in failing to acknowledge the role [sic] Pennsylvania remediation statutes in any remediation of a hazardous site in its remand order?

*Gibraltar Rock, Inc. v. DEP*, 266 A.3d 442, 443 (Pa. 2021) (re-numbered).

did not dispute the legal premise that Gibraltar, as the applicant, was required to comply with the statutory permitting mandates; nor did they challenge the finding that Gibraltar failed at the administrative hearing to rebut the Township's evidence that it failed to meet the applicable statutory requirements for a permit to be issued.

Instead, when Gibraltar appealed to the Commonwealth Court, it only challenged the propriety of the Board's decision to rescind rather than remand the permit to the Department for further proceedings. Gibraltar's Petition for Review, 5/26/2020, ¶ 13; Gibraltar's Commonwealth Court Brief, 9/4/2020, at 29-30. Pursuant to the Pennsylvania Rules of Appellate Procedure, an appellate brief must raise the questions involved, and no questions will be considered unless stated in the "statement of the questions involved." Pa.R.A.P. 2116(a). The Note to the Rule explains that the statement of questions should be drafted "with sufficient specificity to enable the reviewing court to readily identify the issues to be resolved[.]" Pa.R.A.P. 2116 Note. In the Commonwealth Court, Gibraltar's "statement of the questions involved"[14] and its brief solely advanced a challenge that the Board's determination to rescind was based

---

[14] **STATEMENT OF THE QUESTION INVOLVED**

> SHOULD THE ORDER OF THE ENVIRONMENTAL HEARING BOARD BE REVERSED AND GIBRALTAR ROCK'S APPROVALS REMANDED TO THE DEPARTMENT OF ENVIRONMENTAL PROTECTION FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THE TERMS OF THE ADJUDICATION BECAUSE THE BOARD ABUSED ITS DISCRETION RESCINDING THE APPROVALS RATHER THAN REMANDING THEM TO THE DEPARTMENT FOR FURTHER PROCEEDINGS?

Gibraltar's Commonwealth Court Brief, 9/4/2020, at 4.

on two findings of fact that were not supported by substantial evidence: (1) the Department had no immediate or specific plans to conduct further studies or remediation activities at the Hoff VC site (i.e., Finding of Fact 133); and (2) there was a lack of momentum at the Hoff VC site. Gibraltar's Commonwealth Court Brief, 9/4/2020, at 29.[15]

Yet, when the Commonwealth Court reversed the order of the Board, it did not address whether there was substantial evidence to support the two findings as Gibraltar had urged. Instead, the court pursued three unique theories, finding that the Board erred in rescinding the permits based on the Department's actions rather than Gibraltar's; that the Board's decision effectuated an unconstitutional taking; and that the Board's decision may have worked a harm on the environment in violation of Article I, Section 27. *Gibraltar Rock*, 258 A.3d at 581-84.

Appellants urge that the Commonwealth Court exceeded its authority. The Department characterizes Gibraltar's petition for review as being a "request for limited review," and it views the Commonwealth Court as having inserted three significant issues sua sponte. This, according to the Department, violated "[l]ongstanding judicial practice and precedent [which] prohibits an appellate court from reversing a judgment on a basis that was not raised and preserved by the parties." Department's Brief at 16. It draws attention to this Court's decision in *Danville Area School District v. Danville Area Education Ass'n.*, 754 A.2d 1255 (Pa. 2000), where we held that sua sponte consideration of issues deprives counsel of the opportunity to brief and argue issues

---

[15] Although the statement of the question is couched in terms of the Board's abuse of discretion, Gibraltar's argument was premised on the error that the Board's recitation of the permits was not "based on substantial evidence."

and "disturbs the process of an orderly judicial decision making." Department's Brief at 17 (citing *Danville*, 754 A.2d at 1259). The Department explains that the Commonwealth Court's sua sponte invocation of Section 24 of the Noncoal Act "is a critical example of the danger" of this practice. *Id*. at 21-22 (citing 52 P.S. § 3324). The parties never had the opportunity to address Section 24, which, according to the Department, does not apply to review of permit applications submitted after March 17, 1990. *Id*. Further, the Department stresses that the Commonwealth Court failed to address the one question Gibraltar raised. *Id*. at 22.

The Township likewise asserts that the Commonwealth Court erroneously invoked issues sua sponte. The Township compares this case to *Commonwealth ex rel. Robinson by Robinson v. Robinson*, 478 A.2d 800 (Pa. 1984), in which this Court found that "the Superior Court exceeded the proper scope of appellate review by reviewing the record independently of the issues raised by the parties." Township's Brief at 36-38 (citing *Robinson,* 478 A.2d at 804).[16]

For its part, Gibraltar tactfully acknowledges that the "Commonwealth Court likely put more on paper than was needed." Gibraltar's Brief at 32. Gibraltar does not defend

---

[16] Widener University Commonwealth Law School Environmental Law and Sustainability Center together with Citizens for Pennsylvania's Future, Delaware Riverkeeper Network, Green Amendments for the Generations, and Clean Air Council submit an amicus brief in support of Appellants. They focus on the Board's determination that the permits violated the Article I, Section 27 of the Pennsylvania Constitution, and they urge this Court to affirm that constitutional analysis. Widener Amicus Brief at 10. The Pennsylvania State Association of Township Supervisors submit an amicus brief in support of the Township, arguing in support of the Board's determination to rescind the permits. Township Supervisors Amicus Brief at 10. The Township Supervisors, like the Township, suggest that rescission was the only remedy available to the Board in this scenario. *Id*.; Township's Brief at 23 (arguing that once it is determined that a permit should not have been issued, it must be rescinded).

the Commonwealth Court's analysis, but instead proposes that "the prudential result" would be for this Court to "affirm the Commonwealth Court's order for the narrower reasons" Gibraltar raised and "abrogate unneeded discussion in the opinion below." *Id*. (citing *EQT Prod. Co. v. DEP*, 181 A.3d 1128 (Pa. 2018)). Gibraltar alternatively suggests that the Court could categorize certain aspects of the Commonwealth Court's opinion as non-binding dicta and dismiss the matter as improvidently granted. *Id*. at 33 n.36.

These arguments require this Court to address the scope of Gibraltar's appeal before the Commonwealth Court, starting with well-established principles of issue preservation, to determine whether the Commonwealth Court exceeded its authority by addressing issues that were not raised on appeal.[17] An appellate court must address an appeal as it is filed and generally may not raise an issue sua sponte.[18] "An appellate court … can only pass upon the legal question involved in any case which comes before it[.]" *Francis v. Neville Twp.,* 92 A.2d 892, 894 (Pa. 1952). "We have held on numerous occasions that where the parties fail to preserve an issue for appeal, [an appellate court] may not address the issue, even if the disposition of the trial court was fundamentally wrong." *Knarr v. Erie Ins. Exch.*, 723 A.2d 664, 666 (Pa. 1999).

---

[17] This issue of the authority of the Commonwealth Court to address certain issues is a legal one over which our review is plenary. *See similarly Commonwealth v. Bishop*, 217 A.3d 833 (Pa. 2019) (providing that review of waiver issue is plenary).

[18] The common exceptions to this rule – subject matter jurisdiction and sentencing legality – do not apply here. *See Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 399 (Pa. 2021) ("The lack of jurisdiction of the subject matter may be raised at any time and may be raised by the court sua sponte if necessary."); *see also Commonwealth v.* Foster, 17 A.3d 332, 352 (Pa. 2011) (Castile, C.J., concurring) ("A classic claim of sentencing 'legality' is obvious, undeniable, and capable of even administration, so much so that the claim may be raised sua sponte.").

In *Knarr*, for instance, the trial court calculated an award arising out of an automobile collision with citation to the Uniform Arbitration Act of 1927. *Id*. at 665. When Erie Insurance appealed, it raised multiple issues but did not challenge the applicability of the Uniform Arbitration Act of 1927. Notwithstanding Erie's waiver, the Superior Court sua sponte determined that a more recent version of the Uniform Arbitration Act (the "Act of 1980") applied, and it reversed on that basis. *Id*. at 666. On review, this Court held that addressing the Act of 1980 sua sponte was "clear error" on the part of the Superior Court, "regardless of the accuracy of [its] legal analysis." *Id*.

One year later, we confirmed that this general precept extends to constitutional errors. *Danville*, 754 A.2d at 1259. In *Danville*, a retired teacher sought the benefit of a legislative retirement incentive enacted after her retirement. *Id*. at 1257. Before an arbitrator and the trial court, the primary dispute concerned the meaning of "years of service," with the arbitrator holding and the trial court affirming that the term encompassed time spent in military service or on maternity leave such that the retired teacher was entitled to the benefit of the retirement incentive. *Id*. at 1258. The School District appealed to the Commonwealth Court, still focusing on the meaning of the disputed term. The Commonwealth Court sua sponte raised the issue of an unconstitutional impairment of contract and reversed the award on that basis. *Id*. We found that the Commonwealth Court "did not have the power to raise the constitutionality of the award" sua sponte, relying on the "jurisprudential tenet that a court will consider only the controversies preserved by the litigants[.]" *Id*. at 1259. We explained that this tenet applies even to constitutional errors, citing our decision from *Wiegand v. Wiegand*, 337 A.2d 256 (Pa. 1976) in the following passage:

> In a unanimous decision, our court held that the Superior Court, by sua sponte deciding the constitutionality of the Divorce Law, when the constitutionality of the provisions in question was never questioned by the parties either in the trial court or in their briefs to the Superior Court, exceeded its proper appellate function of deciding controversies presented to it. The policy reasons expressed by our court twenty-five years ago behind prohibiting the sua sponte raising of issues by an appellate court to reverse a judgment are as valid today as then. Sua sponte consideration of issues disturbs the process of orderly judicial decision making. A reviewing court addressing an issue on its own deprives counsel of the opportunity to brief and argue the issues and the court the benefit of counsel's advocacy. [*Wiegand*, 337 A.2d at 257]. It renders the lower proceedings a mere dress rehearsal for further appellate review.

*Danville*, 754 A.2d at 1259 (citing *Wiegand*, 337 A.2d at 257-58).

This reasoning applies with equal force to the three issues raised sua sponte by the Commonwealth Court in the instant matter. Here, when it appealed to the Commonwealth Court, Gibraltar raised only the issue of whether the determination to rescind the permits was supported by substantial evidence. Yet, the Commonwealth Court reversed the Board for three reasons not raised by Gibraltar.

First, the Commonwealth Court addressed the Board's focus on the Department's conduct rather than Gibraltar's and relied on Section 24 of the Noncoal Act. Gibraltar did not invoke Section 24 of the Noncoal Act. More to the point, Gibraltar did not challenge the Board's finding that its quarry operation could not be permitted consistent with the Noncoal Act. Nor did it claim that the Board erred in rescinding the permits based on the Department's inaction rather than focusing on Gibraltar's action or inaction. Instead, Gibraltar narrowly contested the Board's finding that the Department's Hoff VC site remediation efforts lacked direction and momentum. It simply sought to demonstrate that the Board got these facts wrong. *See* Gibraltar's

Commonwealth Court Brief, 9/4/2020, at 29-30 (arguing that there was "no substantial evidence of [r]ecord" to support the Finding of Fact 133). The Commonwealth Court's sua sponte invocation and reliance on Section 24 of the Noncoal Act, 52 P.S. § 3324, deprived the parties of the opportunity to address Section 24 and raise arguments that it has no applicability to the present circumstances, arguments that would have otherwise been made in the course of normal briefing. This sua sponte invocation of an issue to support reversal of the Board violated basic precepts of issue preservation and the Commonwealth Court's authorized scope of review.

Likewise, the Commonwealth Court exceeded its authority when it sua sponte addressed the two constitutional issues – i.e., that the "Board effected a taking … without due process of law" and that "the Board's adjudication is not consonant" with Article I, Section 27. *Gibraltar*, 258 A.3d at 582-84. Because these issues were never preserved or raised on appeal, the Commonwealth Court should not have raised and considered them sua sponte. *Danville*, 754 A.2d at 1260.

Finally, we decline to address Gibraltar's alternative argument that the Board's rescission of the Permits was based on facts not "supported by substantial evidence." Instead, we remand for the Commonwealth Court to address that issue in the first instance.

Having determined that the Commonwealth Court erred in resolving the appeal based on its independent consideration and analysis of constitutional and statutory issues, the order of the Commonwealth Court is hereby vacated, and the matter is remanded to the Commonwealth Court.

Chief Justice Todd and Justices Dougherty, Wecht, Mundy and Brobson join the opinion.

The Late Chief Justice Baer did not participate in the decision of this matter.